GILLESPIE, ADMINISTRATRIX *v.* UNITED
STATES STEEL CORP.

No. 10.   Argued October 13, 1964.—Decided December 7, 1964.

*Jack G. Day* argued the cause for petitioner. With him on the brief was *Bernard A. Berkman.*

*Thomas V. Koykka* argued the cause for respondent. With him on the brief were *McAlister Marshall* and *Robert B. Preston.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner, administratrix of the estate of her son Daniel Gillespie, brought this action in federal court against the respondent shipowner-employer to recover

damages for Gillespie's death, which was alleged to have occurred when he fell and was drowned while working as a seaman on respondent's ship docked in Ohio. She claimed a right to recover for the benefit of herself and of the decedent's dependent brother and sisters under the Jones Act, which subjects employers to liability if by negligence they cause a seaman's injury or death.[1] She also claimed a right of recovery under the Ohio wrongful death statute [2] because the vessel allegedly was not seaworthy as required by the "general maritime law." The complaint in addition sought damages for Gillespie's pain and suffering before he died, based on the Jones Act and the general maritime law, causes of action which petitioner said survived Gillespie's death by force of the Jones Act itself and the Ohio survival statute,[3] respectively. The District Judge, holding that the Jones Act supplied the exclusive remedy, on motion of respondent struck all parts of the complaint which referred to the Ohio statutes or to unseaworthiness. He also struck all reference to recovery for the benefit of the brother and sisters of the decedent, who respondent had argued were

---

[1] 41 Stat. 1007, 46 U. S. C. § 688 (1958 ed.):

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

[2] Ohio Rev. Code § 2125.01.

[3] Ohio Rev. Code § 2305.21.

not beneficiaries entitled to recovery under the Jones Act while their mother was living.

Petitioner immediately appealed to the Court of Appeals. Respondent moved to dismiss the appeal on the ground that the ruling appealed from was not a "final" decision of the District Court as required by 28 U. S. C. § 1291 (1958 ed.).[4] Thereupon petitioner administratrix, this time joined by the brother and sisters, filed in the Court of Appeals a petition for mandamus or other appropriate writ commanding the District Judge to vacate his original order and enter a new one either denying the motion to strike or in the alternative granting the motion but including also "the requisite written statement to effectively render his said order appealable within the provisions of 28 U. S. C. A. § 1292 (b)," a statute providing for appeal of certain interlocutory orders.[5] Without definitely deciding whether mandamus would have been appropriate in this case or deciding the "close" question of appealability, the Court of Appeals proceeded to determine the controversy "on the merits as though it were submitted on an appeal";[6] this the court said it felt free to

---

[4] "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."

[5] Section 1292 (b) provides:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

[6] 321 F. 2d 518, 532.

do since its resolution of the merits did not prejudice respondent in any way, because it sustained respondent's contentions by denying the petition for mandamus and affirming the District Court's order.[7] 321 F. 2d 518. Petitioner brought the case here, and we granted certiorari. 375 U. S. 962.

## I.

In this Court respondent joins petitioner in urging us to hold that 28 U. S. C. § 1291 (1958 ed.) does not require us to dismiss this case and that we can and should decide the validity of the District Court's order to strike. We agree. Under § 1291 an appeal may be taken from any "final" order of a district court. But as this Court often has pointed out, a decision "final" within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 545. And our cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction." *Cohen* v. *Beneficial Industrial Loan Corp., supra*, 337 U. S., at 546. See also *Brown Shoe Co.* v. *United States*, 370 U. S. 294, 306; *Bronson* v. *Railroad Co.*, 2 Black 524, 531; *Forgay* v. *Conrad*, 6 How. 201, 203. *Dickinson* v. *Petroleum Conversion Corp.*, 338 U. S. 507, 511, pointed out that in deciding the question of finality the most important competing considerations are "the inconvenience and costs

---

[7] No review is sought in this Court of the denial of the petition for mandamus.

of piecemeal review on the one hand and the danger of denying justice by delay on the other." Such competing considerations are shown by the record in the case before us. It is true that the review of this case by the Court of Appeals could be called "piecemeal"; but it does not appear that the inconvenience and cost of trying this case will be greater because the Court of Appeals decided the issues raised instead of compelling the parties to go to trial with them unanswered. We cannot say that the Court of Appeals chose wrongly under the circumstances. And it seems clear now that the case is before us that the eventual costs, as all the parties recognize, will certainly be less if we now pass on the questions presented here rather than send the case back with those issues undecided. Moreover, delay of perhaps a number of years in having the brother's and sisters' rights determined might work a great injustice on them, since the claims for recovery for their benefit have been effectively cut off so long as the District Judge's ruling stands. And while their claims are not formally severable so as to make the court's order unquestionably appealable as to them, cf. *Dickinson* v. *Petroleum Conversion Corp., supra,* there certainly is ample reason to view their claims as severable in deciding the issue of finality, particularly since the brother and sisters were separate parties in the petition for extraordinary relief. Cf. *Swift & Co. Packers* v. *Compania Colombiana Del Caribe, S. A.,* 339 U. S. 684, 688–689; *Gumbel* v. *Pitkin,* 113 U. S. 545, 548. Furthermore, in *United States* v. *General Motors Corp.,* 323 U. S. 373, 377, this Court contrary to its usual practice reviewed a trial court's refusal to permit proof of certain items of damages in a case not yet fully tried, because the ruling was "fundamental to the further conduct of the case." For these same reasons this Court reviewed such a ruling in *Land* v. *Dollar,* 330 U. S. 731, 734, n. 2, and *Larson* v. *Domestic*

*& Foreign Commerce Corp.*, 337 U. S. 682, 685, n. 3, where, as here, the case had not yet been fully tried. And see *Cohen* v. *Beneficial Industrial Loan Corp., supra,* 337 U. S., at 545–547. We think that the questions presented here are equally "fundamental to the further conduct of the case." It is true that if the District Judge had certified the case to the Court of Appeals under 28 U. S. C. § 1292 (b) (1958 ed.), the appeal unquestionably would have been proper; in light of the circumstances we believe that the Court of Appeals properly implemented the same policy Congress sought to promote in § 1292 (b) by treating this obviously marginal case as final and appealable under 28 U. S. C. § 1291 (1958 ed.). We therefore proceed to consider the correctness of the Court of Appeals' judgment.

## II.

In 1930 this Court held in *Lindgren* v. *United States,* 281 U. S. 38, that in passing § 33 of the Merchant Marine Act, 1920, now 46 U. S. C. § 688 (1958 ed.), commonly called the Jones Act, Congress provided an exclusive right of action for the death of seamen killed in the course of their employment, superseding all state death statutes which might otherwise be applied to maritime deaths, and, since the Act gave recovery only for negligence, precluding any possible recovery based on a theory of unseaworthiness. A strong appeal is now made that we overrule *Lindgren* because it is said to be unfair and incongruous in the light of some of our later cases which have liberalized the rights of seamen and nonseamen to recover on a theory of unseaworthiness for injuries, though not for death.[8] No one of these cases, however, has cast doubt on the correctness of the inter-

---

[8] See, *e. g., The Tungus* v. *Skovgaard,* 358 U. S. 588, 595, n. 9; *Pope & Talbot, Inc.* v. *Hawn,* 346 U. S. 406; *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85; *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96.

pretation of the Jones Act in *Lindgren,* based as it was on a careful study of the Act in the context of then-existing admiralty principles, decisions and statutes. The opinion in *Lindgren* particularly pointed out that prior to the Jones Act there had existed no federal right of action by statute or under the general maritime law to recover damages for wrongful death of a seaman,[9] though some of the States did by statute authorize a right of recovery which admiralty would enforce.[10] Congress, the *Lindgren* Court held, passed the Jones Act in order to give a uniform right of recovery for the death of every seaman. "It is plain," the Court went on to say, "that the Merchant Marine Act is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution, and necessarily supersedes the application of the death statutes of the several States." 281 U. S., at 44. Thirty-four years have passed since the *Lindgren* decision, and Congress has let the Jones Act stand with the interpretation this Court gave it. The decision was a reasonable one then. It provided the same remedy for injury or death for all seamen, the remedy that was and is provided for railroad workers in the Federal Employers' Liability Act.[11] Whatever may be this Court's special responsibility for fashioning rules in maritime affairs,[12] we do not believe that we should now disturb the settled plan of rights and liabilities established by the Jones Act.

---

[9] *Chelentis v. Luckenbach S. S. Co.,* 247 U. S. 372; *The Harrisburg,* 119 U. S. 199; cf. *The Osceola,* 189 U. S. 158.

[10] *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233; cf. *The Hamilton,* 207 U. S. 398.

[11] 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60 (1958 ed.).

[12] See *Fitzgerald* v. *United States Lines Co.,* 374 U. S. 16, 20–21, and cases there cited.

Petitioner argues further that even if the only available remedy for death is under the Jones Act, the District Judge erred in refusing to hold that the Jones Act provides for damages for death for the benefit of the brother and sisters of the decedent as well as for the mother. Their right of recovery, if any, depends on § 1 of the FELA, 45 U. S. C. § 51 (1958 ed.), which provides that recovery of damages for death shall be:

> "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee . . . ."

In *Chicago, B. & Q. R. Co.* v. *Wells-Dickey Trust Co.*, 275 U. S. 161, 163, this Court, speaking through Mr. Justice Brandeis, held that this provision creates "three classes of possible beneficiaries. But the liability is in the alternative. It is to one of the three; not to the several classes collectively." We are asked to overrule this case so as to give a right of recovery for the benefit of all the members of all three classes in every case of death. Both courts below refused to do so, and we agree. It is enough to say that we adhere to the *Wells-Dickey* holding, among other reasons because we agree that this interpretation of the Act is plainly correct. Cf. *Poff* v. *Pennsylvania R. Co.*, 327 U. S. 399.

One other aspect of this case remains to be mentioned. The complaint sought to recover damages for the estate because "decedent suffered severe personal injuries which caused him excruciating pain and mental anguish prior to his death." Petitioner contends that the seaman's claim for pain and suffering survives his death and can be brought on a theory of unseaworthiness by force of the Ohio survival statute. The District Judge struck the reference to the Ohio survival statute from the complaint, and the Court of Appeals held that there was "no substantial basis, in this case," for a claim for pain and

suffering prior to death. There is, of course, no doubt that the Jones Act through § 9 of the FELA, 45 U. S. C. § 59 (1958 ed.),[13] provides for survival after the death of the seaman of "[a]ny right of action given by this chapter," i. e., of his claim based on a theory of negligence. And we may assume, as we have in the past,[14] that after death of the injured person a state survival statute can preserve the cause of action for unseaworthiness,[15] which would not survive under the general maritime law.[16] In holding that petitioner had not stated a claim entitling her to recovery for the decedent's pain and suffering the Court of Appeals relied on *The Corsair*, 145 U. S. 335, 348, a case brought in a federal court to recover damages under a Louisiana survival statute for alleged pain and suffering prior to death by drowning where there was an interval of "about ten minutes" between the accident and death. The Court held such damages could not be recovered there, saying:

> ". . . there is no averment from which we can gather that these pains and sufferings were not substantially cotemporaneous with her death and inseparable as matter of law from it."

---

[13] 36 Stat. 291, 45 U. S. C. § 59 (1958 ed.):

"Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

[14] "Presumably any claims, based on unseaworthiness, for damages accrued prior to the decedent's death would survive, at least if a pertinent state statute is effective to bring about a survival of the seaman's right." *Kernan* v. *American Dredging Co.*, 355 U. S. 426, 430, n. 4. See also *Curtis* v. *A. Garcia y Cia.*, 241 F. 2d 30, 36–37 (C. A. 3d Cir.); *Holland* v. *Steag, Inc.*, 143 F. Supp. 203, 205–206 (D. C. D. Mass.).

[15] Cf. *Just* v. *Chambers*, 312 U. S. 383.

[16] *Cortes* v. *Baltimore Insular Line, Inc.*, 287 U. S. 367.

Plainly this Court did not hold in *The Corsair* that damages cannot ever be recovered for physical and mental pain suffered prior to death by drowning. The case held merely that the averments of the plaintiff there did not justify awarding such damages in an action under the Louisiana survival statute. The Court's language certainly did not preclude allowance of such damages in all circumstances under other laws, or even under the Louisiana statute in a case where pain and suffering were "not substantially cotemporaneous with . . . death and inseparable as matter of law from it." In this day of liberality in allowing amendment of pleadings to achieve the ends of justice,[17] the issue whether the decedent's estate could recover here for pain and suffering prior to death should not have been decided finally by the Court of Appeals on the basis of mere pleading. Therefore the question whether damages can be recovered for pain and suffering prior to death on the facts of this case will remain open. In all other respects the judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE GOLDBERG, dissenting in part.

I agree that this case is properly here, but disagree with the Court on the merits of the basic question presented for decision.

The precise point at issue in this case is whether a suit in a federal court for the death of a seaman resulting from unseaworthiness of a vessel may be maintained against the employer where the death occurs within the waters of a State which provides a statutory remedy for wrongful death.

In deciding this question, the Court today preserves an anomaly in admiralty law which has neither reason nor

---

[17] See Fed. Rules Civ. Proc. 15; *Foman* v. *Davis,* 371 U. S. 178; *United States* v. *Hougham,* 364 U. S. 310; cf. *Conley* v. *Gibson,* 355 U. S. 41.

justification. A seaman who is either injured or killed while on the high seas is given a remedy for either negligence or unseaworthiness, *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, *Kernan* v. *American Dredging Co.,* 355 U. S. 426, 430, n. 4; a seaman who is injured in territorial waters may also sue for either negligence or unseaworthiness, *McAllister* v. *Magnolia Petroleum Co.,* 357 U. S. 221, cf. *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85; an injured seaman may also sue for maintenance and cure and these claims survive his death, see *Kernan* v. *American Dredging Co., supra,* at 430, n. 4; a nonseaman's death in territorial waters gives rise to an action based upon the applicable state wrongful death statute for both negligence and the general maritime doctrine of unseaworthiness, *The Tungus* v. *Skovgaard,* 358 U. S. 588. Only the family survivors of a seaman are left without a remedy for his death within territorial waters caused by failure to maintain a seaworthy vessel. Only they are denied recourse to this rule of absolute liability and relegated to proof of negligence under the Jones Act. This disparity in treatment has been characterized by the lower federal courts as "deplorable," "anomalous," "archaic," "unnecessary," and "hard to understand." See *Fall* v. *Esso Standard Oil Co.,* 297 F. 2d 411, 417 (C. A. 5th Cir.) (Wisdom, J.); *Mortenson* v. *Pacific Far East Line, Inc.,* 148 F. Supp. 71, 73 (D. C. N. D. Cal.); *Gill* v. *United States,* 184 F. 2d 49, 57 (C. A. 2d Cir.) (L. Hand, J., dissenting). I agree with these characterizations.

The Court relies upon *Lindgren* v. *United States,* 281 U. S. 38, and the doctrine of *stare decisis* to justify its holding—a holding which, in my view, is at variance with the general congressional intent in enacting the Jones Act "to provide liberal recovery for injured workers." *Kernan* v. *American Dredging Co.,* 355 U. S. 426, 432. I do not feel that *stare decisis* compels the conclusion reached by the Court, because I believe, first, that the

language of the Court in *Lindgren* is dictum and, second, that even if the language embodied a holding, such a holding should be overruled.

The precise issue before the Court in *Lindgren* was not whether a state wrongful death statute should be applied to supply a remedy for *unseaworthiness*—the issue here presented—but rather whether such a statute should be applied to supply a remedy for negligence.

The libel in *Lindgren,* the Court acknowledged, "does not allege the unseaworthiness of the vessel and is based upon negligence alone . . . ." 281 U. S., at 47.

The actual decision in *Lindgren* of precedential effect is that the Jones Act which provides a remedy for wrongful death due to negligence supersedes state remedies for such negligence. With this precise holding there can be no quarrel. The Jones Act, 41 Stat. 1007, 46 U. S. C. § 688 (1958 ed.), says that "statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable" to seamen's cases. This Court has held that Congress intended that the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60 (1958 ed.), replace negligence and related state remedies. *New York Central R. Co.* v. *Winfield,* 244 U. S. 147. The Court in *Lindgren* reasonably concluded that the Jones Act, incorporating the standard of the FELA, supersedes and pre-empts state remedies for negligence. It correctly decided that since the wrongful death before it was "based upon negligence alone" recovery could only be had under the Jones Act and not under the state wrongful death statute. On this precise holding, *Lindgren* is a valid precedent and should be followed.

The Court in *Lindgren,* however, went on to say, at 46–47:

"In the light of the foregoing decisions and in accordance with the principles therein announced we

conclude that the Merchant Marine Act—adopted by Congress in the exercise of its paramount authority in reference to the maritime law and incorporating in that law the provisions of the Federal Employers' Liability Act—establishes as a modification of the prior maritime law a rule of general application in reference to the liability of the owners of vessels for injuries to seamen extending territorially as far as Congress can make it go; that this operates uniformly within all of the States and is as comprehensive of those instances in which by reference to the Federal Employers' Liability Act it excludes liability, as of those in which liability is imposed; and that, as it covers the entire field of liability for injuries to seamen, it is paramount and exclusive, and supersedes the operation of all state statutes dealing with that subject.

"It results that in the present case no resort can be had to the Virginia Death Statute, either to create a right of action not given by the Merchant Marine Act, or to establish a measure of damages not provided by that Act.

"Nor can the libel be sustained as one to recover indemnity for Barford's death under the old maritime rules on the ground that the injuries were occasioned by the unseaworthiness of the vessel. Aside from the fact that the libel does not allege the unseaworthiness of the vessel and is based upon negligence alone, an insuperable objection to this suggestion is that the prior maritime law, as herein above stated, gave no right to recover indemnity for the death of a seaman, although occasioned by unseaworthiness of the vessel."

It is apparent from this statement itself that the Court's observation that the Jones Act pre-empted state remedies for death resulting from unseaworthiness, as

distinguished from negligence, was purely and simply *obiter dictum*. Cf. *The Tungus* v. *Skovgaard, supra,* at 606–607 (opinion of Mr. Justice Brennan). Even the English courts, which hold to a doctrine of *stare decisis* more rigid than our own, hold that *obiter dicta* are in no wise controlling.[1] Surely the rule of *stare decisis* should not preclude consideration of whether such dicta were originally supported by logic and have withstood the test of time.

In fact, much of the reasoning supporting the *Lindgren* dictum has been rejected in subsequent decisions of this Court. The Court's rationale in *Lindgren* for its conclusion that the Jones Act pre-empted remedies for wrongful death resulting from unseaworthiness, as well as negligence, was in part that the Act "covers the entire field of liability for injuries to seamen, it is paramount and exclusive." *Lindgren* v. *United States, supra,* at 47. In *Mahnich* v. *Southern S. S. Co., supra,* however, this Court held that a seaman may recover for injuries sustained from the ship's unseaworthiness notwithstanding his right to a remedy under the Jones Act for negligence. And in *Seas Shipping Co.* v. *Sieracki, supra,* the Court held that the same is true of longshoremen.[2] The logic

---

[1] Catlett, The Development of the Doctrine of Stare Decisis and the Extent to Which it Should Be Applied. 21 Wash. L. Rev. 158, 162.

[2] Moreover, federal courts have borrowed state survival statutes to allow for the survival of claims based upon unseaworthiness for conscious pain and suffering prior to the seaman's death. *Holland* v. *Steag, Inc.,* 143 F. Supp. 203 (D. C. D. Mass.) cited with approval in *Kernan* v. *American Dredging Co., supra,* at 430, n. 4; accord: *McLaughlin* v. *Blidberg Rothchild Co.,* 167 F. Supp. 714 (D. C. S. D. N. Y.); cf. *Just* v. *Chambers,* 312 U. S. 383. I see no way to hold under *Lindgren* that state survival statutes may be applied to preserve actions for pain and suffering, yet state wrongful death actions may not be used to allow an action for wrongful death.

of Judge Learned Hand's comment on the effect of these decisions on the rationale of the *Lindgren* dicta is inescapable:

> "I find it hard to understand why the rationale of Lindgren v. United States . . . ought not to have forbidden recovery in either of these instances. If the Jones Act 'covers the entire field of liability for injuries to seamen' . . . and 'is paramount and exclusive,' why does it not supersede injuries arising from unseaworthiness which do not result in death, as well as those which do?" *Gill* v. *United States, supra,* at 57.

There is, however, an answer to Judge Hand's question. The Court in *Lindgren* was wrong in its sweeping assertion that the Jones Act covers the *entire* field of liability for injuries to seamen and is paramount and exclusive. Congress in passing the Jones Act meant to leave certain pre-existing remedies untouched. And Congress did not intend in enacting the Jones Act— a remedial statute—to eliminate the seaman's right to recovery for maintenance and cure or for unseaworthiness. See *The Osceola,* 189 U. S. 158, 175. The admiralty rule that the vessel and owner are liable to the seaman for "injury caused by unseaworthiness of the vessel or its appurtenant appliances and equipment, has been the settled law since this Court's ruling to that effect in *The Osceola,* [189 U. S. 158,] 175." *Mahnich* v. *Southern S. S. Co., supra,* at 99.

What Congress did intend in enacting the Jones Act was to provide an additional remedy denied in maritime law, as ruled in *The Osceola, supra,* "by way of indemnity beyond maintenance and cure, for the injury to a seaman caused by the mere *negligence* of a ship's officer or member of the crew." *Ibid.* (Emphasis added.)

164

In other words, prior to the Jones Act, "the maritime law afforded no remedy . . . for . . . injury to a seaman caused by . . . negligence." *Ibid.* The Jones Act supplied a maritime remedy for *negligence;* it pre-empted those purely state remedies related to negligence and it is paramount and exclusive only to that extent.[3] The Act does not supersede, as *Mahnich* holds, traditional maritime remedies for unseaworthiness.

Traditional maritime law not only recognized the right of a seaman to recover for injuries caused by unseaworthiness, *The Osceola, supra,* at 175; it also recognized a right of action to recover for the death of a seaman resulting from unseaworthiness of a vessel where the death occurs in the navigable waters of a State which provides a statutory remedy for wrongful death. This was recognized in the *Lindgren* opinion. 281 U. S., at 43. See also *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242.

Simple logic compels the conclusion that if the Jones Act does not pre-empt a seaman's traditional remedy for injuries caused by unseaworthiness, it similarly does not pre-empt the right of action to recover for the death of a seaman resulting from unseaworthiness to the extent that such a remedy was recognized before the Jones Act in States providing a statutory remedy for wrongful death.

Legislative history as well as logic supports the conclusion that Congress by enacting the Jones Act did not intend to eliminate then-existing remedies for unseaworthiness.

---

[3] Even if the analogy with FELA cases were followed exactly, *New York Central R. Co.* v. *Winfield, supra,* could require no more than pre-emption of *purely* state strict liability remedies. A wrongful death action based on unseaworthiness was a mixed state-federal remedy in which maritime courts borrowed a state wrongful death action which in turn was based upon a federal maritime standard of liability. Nothing in *Winfield* requires a finding that this type of remedy was pre-empted.

The same Congress which passed the Jones Act providing a remedy for injuries to a seaman resulting from negligence and a remedy for wrongful death caused by negligence where the death occurs in state waters, enacted the Death on the High Seas Act, 41 Stat. 537, 46 U. S. C. §§ 761–768 (1958 ed.). This statute gives an admiralty remedy for wrongful death of a seaman or other person occurring on the high seas beyond a marine league from the shore of any State. The Act expressly stipulates that "[t]he provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." 41 Stat. 538, 46 U. S. C. § 767 (1958 ed.)

In *The Tungus* v. *Skovgaard, supra,* at 593, MR. JUSTICE STEWART for the Court said of this exception:

> "The legislative history of the Death on the High Seas Act discloses a clear congressional purpose to leave 'unimpaired the rights under State statutes as to deaths on waters within the territorial jurisdiction of the States.' S. Rep. No. 216, 66th Cong., 1st Sess. 3; H. R. Rep. No. 674, 66th Cong., 2d Sess. 3. The record of the debate in the House of Representatives preceding passage of the bill reflects deep concern that the power of the States to create actions for wrongful death in no way be affected by enactment of the federal law. 59 Cong. Rec. 4482–4486."

From this expression of congressional purpose, the Court in *The Tungus* concluded that a suit in admiralty for death of a longshoreman resulting from unseaworthiness of a vessel may be maintained against the vessel's owner where the death occurs in the waters of a State which provides a statutory remedy for wrongful death.

It seems to me to strain credulity to impute to Congress the intent to eliminate state death remedies for unseaworthiness where the decedent is a seaman while

refusing to do so in cases involving nonseamen. Yet this is the result of the Court's following *Lindgren*.

Finally, even though the *Lindgren* dictum has been in existence for 34 years, no policy of *stare decisis* militates against overruling *Lindgren*. In refusing to follow *Lindgren* we would not create new duties or standards of liability; we would merely allow a new remedy. Shipowners are currently required to maintain a seaworthy ship; seamen and longshoremen currently recover for death on the high seas and injury suffered anywhere due to an unseaworthy vessel. The action of a shipowner in maintaining his vessel will not be affected by now allowing recovery for wrongful death in territorial water caused by unseaworthiness. It is thus difficult to find much if any reliance that would justify the continuation of a legal anomaly which would deny a humane and justifiable remedy.

*Stare decisis* does not mean blind adherence to irrational doctrine. The very point of *stare decisis* is to produce a sense of security in the working of the legal system by requiring the satisfaction of reasonable expectations. I should think that by allowing a remedy where one is needed, by eliminating differences not based on reason, while still leaving the underlying scheme of duties unchanged, this sense of security will not be weakened but strengthened. The policies behind *stare decisis* point toward ignoring *Lindgren,* not following it.

I cannot agree that Congress in enacting the Jones Act, designed "to provide liberal recovery for injured workers," intended to create the anomaly perpetuated by the Court's decision. I would reverse and free the lower federal courts to grant relief in these cases—relief which many of them have indicated is just and proper "in terms of general principles," *Fall* v. *Esso Standard Oil Co., supra,* at 417, and which they gladly would accord but for the unfortunate and unnecessary compulsion of *Lindgren*.

Since petitioner claims that Ohio law allows recovery for a wrongful death caused by unseaworthiness, nothing in either the majority or minority opinion in *The Tungus* v. *Skovgaard, supra,* would preclude recovery. Only the *Lindgren* dictum stands in the way. I would reject this dictum and reverse.

MR. JUSTICE HARLAN, dissenting.

I think that due regard for the "finality" rule governing the appellate jurisdiction of the courts of appeals requires that the judgment below be vacated and the case remanded to the Court of Appeals with instructions to dismiss the appeal because the decision of the District Court was not a "final" one, and hence not reviewable by the Court of Appeals at this stage of the litigation.

Petitioner sought to recover in this action upon two theories: negligence under the Jones Act and unseaworthiness under the general maritime law. The District Court dismissed the unseaworthiness claim in the complaint, and petitioner appealed. Although petitioner seemed to recognize that the order was not appealable,[1] the Court of Appeals, overruling respondent's motion to dismiss for lack of jurisdiction, affirmed on the merits and this Court granted certiorari over respondent's showing that the Court of Appeals should not have entertained the appeal. The Court substantially affirms the judgment of the Court of Appeals and the parties are remanded to a trial on the merits, but only after they have incurred needless delay and expense in consequence of the loose practices sanctioned by the Court of Appeals and in turn by this Court. This case thus presents a striking example of the vice inherent in a system which

---

[1] After the appeal was filed, petitioner unsuccessfully sought a writ of mandamus to compel the District Court to certify its order to the Court of Appeals under 28 U. S. C. § 1292 (b), *ante,* pp. 151–152.

permits piecemeal litigation of the issues in a lawsuit, a vice which Congress in 28 U. S. C. § 1291 intended to avoid by limiting appeals to the courts of appeals [2] only from "final decisions" of the district courts, with exceptions not here relevant.[3]

Manifestly the decision of the District Court reviewed by the Court of Appeals lacked the essential quality of finality; it involved but interstitial rulings in an action not yet tried. The justifications given by the Court for tolerating the lower court's departure from the requirements of § 1291 are, with all respect, unsatisfactory.

1. The Court relies on the discretionary right of a district court to certify an interlocutory order to the court of appeals under § 1292 (b) when the "order involves a controlling question of law," but the District Court in its discretion—and rightly it turns out—did not make such a certification in this case,[4] and the Court of Appeals,

---

[2] The jurisdictional defect in this case arises only from the lack of finality of the District Court's order. In *United States* v. *General Motors Corp.*, 323 U. S. 373; *Larson* v. *Domestic & Foreign Commerce Corp.*, 337 U. S. 682; and *Land* v. *Dollar*, 330 U. S. 731, all cited in the majority opinion, *ante*, pp. 153–154, the District Court had entered a final judgment, but the Court of Appeals reversed and remanded the case for further proceedings. Thus the finality question before this Court was simply whether it should review a nonfinal order of the Court of Appeals, which of course the Court clearly has authority to do under 28 U. S. C. § 1254 (1) (1958 ed.).

[3] See 28 U. S. C. § 1292 (1958 ed.).

[4] The purpose of § 1292 (b) was to permit a district judge, in his discretion, to obtain immediate review of an order which might control the further conduct of the case and which normally involves an unsettled question of law. Cf. 28 U. S. C. § 1254 (3) (1958 ed.). In this case the District Court's ruling was controlled by *Lindgren* v. *United States*, 281 U. S. 38, and the validity of that ruling could only be tested by having certiorari issue from this Court. In that posture, I think the District Court was quite right in not wanting to delay the litigation on the chance that this Court would re-evaluate its decision in *Lindgren*.

equally correctly in my judgment, refused to order it to do so. The fact that Congress has provided some flexibility in the final judgment rule hardly lends support to the Court's attempt to obviate jurisdictional restrictions whenever a court of appeals erroneously entertains a nonappealable order and hardship may result if the substantive questions are not then decided here.[5]

2. *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, does not support a different result. As the Court in that case stated, § 1291 does not permit appeals from decisions "where they are but steps towards final judgment in which they will merge . . . [and are not] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U. S., at 546. It is clear in this case that had petitioner proceeded to trial and won on her Jones Act claim, her asserted cause of action for unseaworthiness would have merged in the judgment. See *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316. Conversely, her claim would have been preserved for appeal had she lost on her Jones Act claim. Surely the assertion that petitioner is entitled to submit her unseaworthiness theory to the jury is not collateral to rights asserted in her action, so as to entitle her to an appeal before trial.

---

[5] Compare *Schlagenhauf* v. *Holder, ante,* p. 104, at 110. The presence of the brother and sisters, *ante,* p. 153, of the Court's opinion, cannot somehow serve to make the District Court order final. They were parties only to the mandamus proceeding, Court's opinion *ante,* pp. 151, 152, n. 7, their claims were not severable from petitioner's, *id.,* p. 153, and the merit of their claims likewise depended on a holding that *Lindgren* was overruled, see n. 4, *supra.* I can see no "injustice" resulting to the brother and sisters by delaying review of the order until after final judgment which is not also present with respect to petitioner.

3. Finally, the Court's suggestion that "it seems clear now that the case is before us that the eventual costs, as all the parties recognize, will certainly be less if we now pass on the questions presented here rather than send the case back with those issues undecided," *ante,* p. 153, furnishes no excuse for avoidance of the finality rule. Essentially such a position would justify review here of any case decided by a court of appeals whenever this Court, as it did in this instance, erroneously grants certiorari and permits counsel to brief and argue the case on the merits. That, I believe, is neither good law nor sound judicial administration.[6]

I would vacate the judgment of the Court of Appeals and remand the case to that court with directions to dismiss petitioner's appeal for lack of jurisdiction.

Memorandum of MR. JUSTICE STEWART.

While I agree with MR. JUSTICE HARLAN that this case is not properly here, the Court holds otherwise and decides the issues presented on their merits. As to those issues, I join the opinion of the Court.

---

[6] Understandably counsel for the respondent, as he explained in oral argument, did not brief the finality point following the grant of certiorari; he assumed that the granting of the petition, despite his having raised the matter in his response thereto, indicated that the Court had no interest in the question.