574 F.2d 264
 Albert W. FREEMAN (Louise Freeman substituted and stead of
Albert W. Freeman, Deceased), Plaintiff-Appellee,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, Defendant-Appellant.
 No. 76-3402.
 United States Court of Appeals,
Fifth Circuit.
 June 2, 1978.
 
 J. R. Brooks, U. S. Atty., Charles A. Perry, Ann C. Robertson, Asst. U. S. Attys., Birmingham, Ala., Walter E. McCabe, Jr., Atty., Dept. of H. E. W., Office of Gen. Counsel, Baltimore, Md., Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Caryl P. Privett, Asst. U. S. Atty., Birmingham, Ala., for defendant-appellant.
 William E. Mitch, Birmingham, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, HILL and FAY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Our threshold consideration is whether the Order entered by the district court and appealed from is a final and appealable judgment. Because we conclude that the Order is not final and, therefore, is not appealable, we do not reach the merits and dismiss the appeal.
 
 
 2
 Plaintiff-Appellee, Albert W. Freeman,[1] was injured while working in a coal mine. Eventually, he was found eligible for benefits under three programs: the State of Alabama Workmen's Compensation Act, the disability provisions of the Social Security Act, and the "Black Lung benefits" section of Part B of the Federal Coal Mine Health and Safety Act. The amount of the State Workmen's Compensation payments was deducted from both the award of Social Security disability and the award of Black Lung benefits. After unsuccessfully seeking administrative relief, Plaintiff brought suit in the United States District Court for the Northern District of Alabama, contesting the adjustment of both federal programs and asserting that a deduction should have been made from only one of the federal benefit awards.[2] His complaint alleged a constitutional wrong, in the most general sense, by depending on notions of due process and equal protection. Solely on the basis of a stipulation, the district court issued a Memorandum Opinion and Order, simply reversing the decision of the Secretary which had affirmed the reduction of Black Lung benefits payable to the Plaintiff on the basis of his receipt of the State Workmen's Compensation benefits. The district court reversed the Secretary's action on the theory that deductions from both federal programs violated the intent of Congress. The district court further ordered that the Secretary furnish documentary evidence establishing the amount of benefits actually paid to Plaintiff and the amount that would have been paid, but for the double deduction. The Secretary then filed a notice of an appeal to this Court, ignoring the district court's Order for further documents.[3]
 
 
 3
 On appeal, the Secretary asserts that the district court erred in its interpretation of key statutory provisions and argues that deductions from both federal programs because of the State Workmen's Compensation payments comport with the letter and the spirit of the relevant federal statutes, without violating any of Plaintiff's constitutional rights. Because we dismiss this appeal due to the lack of our jurisdiction, we cannot reach the novel and intriguing issues of statutory construction and constitutional law which the merits of this controversy present.
 
 
 4
 It would serve no useful judicial purpose to chronicle the lengthy and involved evolution of the concept of finality. See generally 9 Moore's Federal Practice PP 110.06-110.25; Wright, Miller & Cooper, 15 Federal Practice and Procedure §§ 3905-3919. Generally,[4] to be appealable, a district court's order must be final. 28 U.S.C.A. § 1291. Recently, this Court recognized the final judgment rule as the "dominant rule of federal appellate practice," quoting Mr. Justice Frankfurter's reasoned emphasis on the historic importance of the underlying policy:
 
 
 5
 Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate review of the component elements in a unified cause.
 
 
 6
 Cobbledick v. United States, 309 U.S. 323, 324-25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940), quoted in In re Grand Jury Investigation of Associated Milk Producers Inc., supra at 1297.
 
 
 7
 That a judgment must be final to be appealable is always certain. What is usually uncertain is whether a particular judgment of a district court is "final" as the term is used in the context of appealability, a context in which the term "finality" is "abstruse and infinitely uncertain." Will v. United States, 389 U.S. 90, 108, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (Black, J., concurring).
 
 
 8
 Reflecting the dynamic tension between the specific inefficiencies of postponing review in particular cases and the general inefficiencies of the wholesale granting of piecemeal review, the Supreme Court's treatment of the finality doctrine seems to vacilate between dual approaches: on the one hand, suggesting that a final judgment is one that completely ends the litigation on the merits, on the other hand, eschewing such a rigid requirement of finality while reaffirming the importance of the rule. See Bachowski v. Usery, 545 F.2d 363, 369 (3rd Cir. 1976). See generally, e. g., Gillespie v. United States, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940).
 
 
 9
 The practical approach to finality was emphasized in Gillespie v. United States Steel Corp., supra, 379 U.S. at 152, 85 S.Ct. at 311, citing Cohen v. Beneficial Industrial Loan Corp., supra 337 U.S. at 545, 546, 69 S.Ct. 1221:
 
 
 10
 (A) decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. . . . And our cases long have recognized that whether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a 'practical rather than a technical construction.'
 
 
 11
 In Gillespie, the Supreme Court concluded that, ultimately, a balance must be struck: "in deciding the question of finality the most important competing considerations are the 'inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " Id. at 152-53, 85 S.Ct. at 311, quoting Dickinson v. Petroleum Conversion Corp., supra 338 U.S. at 511, 70 S.Ct. 322. On balance, the potential evil of here establishing a precedent for other piecemeal appeals in other cases is real. Here the balance appears to be struck in favor of a finding of nonappealability. There is simply no significant countervailing interest here to outweigh the dominant and traditional policy of requiring a final decision to avoid piecemeal appeals.
 
 
 12
 This Court has long followed the flexible, practical approach to finality. See, e. g., Kelly v. Greer, 354 F.2d 209 (5th Cir. 1965). And prior opinions have applied the ultimate, balancing approach to finality. See, e. g., Litton Systems, Inc. v. Southwestern Bell Telephone Co., 539 F.2d 418 (5th Cir. 1976); Goldstein v. Andresen & Co., 465 F.2d 972 (5th Cir. 1972); 21 Turtle Creek Square, Ltd. v. New York Teachers' Retirement System, 404 F.2d 31 (5th Cir. 1968); Fox v. West Palm Beach, 383 F.2d 189 (5th Cir. 1967). However, no decision of this Court has squarely held that we have a capricious residual power to "finalize" otherwise nonfinal appeals. And, we decline to do that here.
 
 
 13
 We also decline to treat this otherwise nonfinal Order as appealable under any of the judicial exceptions to the finality requirement. In Huckeby v. Frozen Food Express, 555 F.2d 542 (5th Cir. 1977) this Court carefully analyzed the law of finality and the judicial exceptions to the finality requirement which allow an appeal of an otherwise nonfinal judgment. Recognizing that the three doctrinal exceptions[5] to the finality requirement differ, this Court concluded that one unifying theme was common to each: the exceptions apply only if "an order, otherwise nonappealable, determines substantial rights of the parties which will be irreparably lost if review is delayed until final judgment." Id. at 549, quoting United States v. Wood, supra at 778. While the Secretary depends on some expansive language in several Supreme Court opinions to argue that the judgment here should be considered appealable, he has overlooked this aspect. Here Plaintiff did not receive some payment that the district court concluded he should not have received. The district court merely concluded that the government owes the Plaintiff a yet to be determined amount of money. To comply with the requirement of finality here will not pose any real danger of denying justice to anyone. The appeal will be dismissed; a proper final judgment will be entered; any subsequent appeal may adequately protect against injustice. Also, the Secretary will not circumvent the district court Order, and this appeal will not be artificially maintained simply to obtain an advisory opinion.
 
 
 14
 The general rule, and the rule by which this case is controlled, is that if there has been a determination of liability, leaving damages to be measured before judgment is entered, the determination of liability alone is not final. See, e. g., Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.,516 F.2d 846 (8th Cir. 1975); Western Geophysical Co. v. Bolt Associates, Inc., 463 F.2d 101 (2d Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 523, 34 L.Ed.2d 489 (1972); United States v. Burnett, 262 F.2d 55 (9th Cir. 1959); Fidelity Trust Co. v. Board of Education, 174 F.2d 642 (7th Cir. 1949). But compare Hattersley v. Bollt, 512 F.2d 209 (3d Cir. 1975) and Massachusetts Casualty Insurance Co. v. Forman, 469 F.2d 259 (5th Cir. 1972) with Gonzalez v. Texas Employment Commission, 563 F.2d 776 (5th Cir. 1977).
 
 
 15
 This, then is what the vague judgment before us can best be characterized as: a determination of liability, leaving damages to be measured before a final judgment will be entered. This was the apparent intention of the district court judge when he ordered the production of further documentary evidence. Although the complaints do not pray for any relief beyond declaring the Secretary's decision unconstitutional, the district court, in effect, sua sponte entered a partial summary judgment adjudicating liability and postponing an adjudication of the amount of damages. Such a judgment is simply not final and, therefore, is not appealable. See Fed.R.Civ.P. 56(c); Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).
 
 
 16
 Since we have concluded that the judgment appealed from is not final and appealable, this appeal must be
 
 
 17
 DISMISSED.
 
 
 
 [1]
 The motion for substitution of Louise Freeman in her capacity as administratrix of the estate of the Plaintiff, who died while this appeal was pending, has been granted. Fed.R.App.P. 43(a)
 
 
 [2]
 Over the vigorous protest of the Secretary, the district court noted jurisdiction pursuant to Title 28, United States Code, Sections 1331, 1336. However, it appears that the district court had jurisdiction over Plaintiff's Black Lung benefit claim only pursuant to Title 42, United States Code, Sections 405(g), 405(h), as incorporated in Title 30, United States Code, Section 923(b). Cf. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); Dr. John T. McDonald Foundation, Inc. v. Califano, 571 F.2d 328 (5th Cir. 1978) (en banc ). In any event, the district court had some jurisdiction over the claim. Our concern here is whether we have jurisdiction over this appeal
 
 
 [3]
 In reaching the result we do, we do not wish to appear to approve of the Secretary's obstructive and obstreperous strategy exhibited throughout this litigation
 
 
 [4]
 Judicial and statutory exceptions exist, but are not applicable here. See In re 1975-2 Grand Jury Investigation of Associated Milk Producers, Inc., 566 F.2d 1293, 1297 n.9 (5th Cir. 1978). See also 28 U.S.C.A. §§ 1292, 1651; Fed.R.Civ.P. 54(b)
 
 
 [5]
 See generally Cohen v. Beneficial Industrial Loan Corp., supra; Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848); United States v. Wood, 295 F.2d 772 (5th Cir.), cert. denied, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1961). See also note 4, supra