Earl **LUCAS, Ira M. Gray, Ora Martin Butler and Arthur Holmes, Jr., on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

v.

**BOLIVAR COUNTY, MISSISSIPPI, et al., Defendants-Appellees.**

No. 84–4174.

United States Court of Appeals, Fifth Circuit.

April 11, 1985.

---

McTeer & Bailey, Charles Victor McTeer, Margaret Carey, Greenville, Miss., for plaintiffs-appellants.

Jacobs, Griffith, Pearson, Eddins & Povall, Benjamin E. Griffith, Cleveland, Miss., Crosthwait, Terney & Noble, Hubbard T. Saunders, IV, Jackson, Miss., John L. Hatcher, Cleveland, Miss., for Bolivar County, Miss.

Before RUBIN, RANDALL and TATE, Circuit Judges.

## BY THE COURT:

In this voting rights case, the district court entered an order approving a redistricting plan, directing that it be submitted to the Attorney General for preclearance, and retaining jurisdiction for the purpose of entering further appropriate orders for the calling of a special election subject to the Attorney General's preclearance. We consider whether this is a final judgment or a collateral order from which an appeal will lie or whether it is a nonappealable interlocutory order. We conclude that the district court's order is not a final judgment or an appealable interlocutory order, and we, therefore, grant the motion to dismiss the appeal.

### I.

Voters resident in Bolivar County sought declaratory and injunctive relief under § 2 of the Voting Rights Act[1] and other statutory and constitutional provisions,[2] contending that the voting and registration system in the county denied black citizens equal participation in county supervisory elections and that the redistricting plan then proposed diluted black voting strength and had not been precleared by the United States Attorney General. A three-judge court was convened, and it enjoined the defendant public officials from utilizing the proposed redistricting plan until the United States Attorney General had precleared the plan pursuant to § 5 of the Voting Rights Act.[3] All other issues were remanded to the district court, which enjoined the defendants from further utilizing the redistricting plan and allowed them to prepare and file with the court another redistricting plan after they held public hearings on the matter.

After the defendants submitted a new redistricting plan to the court, the court held a five-day evidentiary hearing. It then issued a memorandum opinion and an order on February 14, 1984. The court held that the redistricting plan did not violate the plaintiffs' constitutional or statutory rights. The final page of the opinion states:

> The court therefore approves the defendant[s'] ... redistricting plan and directs them to submit the same to the Attorney General ... for preclearance under section 5 of the Voting Rights Act of 1965, and retains jurisdiction of this cause for the purpose of entering such further orders as may be appropriate for the calling of a special election of supervisors and constables in Bolivar County.

Thereafter, the court signed an order that repeats this passage verbatim. The plaintiffs have appealed only from this order.

Before filing notice of appeal, the plaintiffs filed a motion for reconsideration of the order of February 14 and a motion for an extension of time to file their notice of appeal. In their motion for reconsideration, the plaintiffs asked the court to vacate its February 14 order. Citing *McDaniel v. Sanchez*,[4] the plaintiffs argued that the court could not rule on the constitutionality of the county's plan or its validity under § 2 of the Voting Rights Act until the plan had been submitted to the Attorney General for preclearance under § 5 of the Act.[5] On March 15, 1984, the district court denied the motion for reconsideration and the request for an extension. The plaintiffs filed their notice of appeal on March 15 immediately after the denial of the extension.

After the Attorney General's preclearance of the redistricting plan, on June 12, 1984, the district court entered what it termed a final judgment. After considera-

1. 42 U.S.C. § 1973 (1982).

2. 42 U.S.C. §§ 1981, 1983; U.S. Const. amends. XIII, XIV, XV.

3. *Lucas v. Bolivar County,* 567 F.Supp. 433 (N.D. Miss.1983); *see* 42 U.S.C. § 1973c (1982).

4. 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981).

5. 42 U.S.C. 1973c (1982).

tion of the plaintiffs' motion to amend that judgment,[6] the district court issued an amended judgment on June 29, 1984. Like the June 12 judgment, this judgment recounts that the county's plan does not violate the Constitution or the Act, orders that elections be held, and specifies the manner in which they are to be held. It also recites: "Therefore, this action is now in a posture for entry of *final judgment* finally approving the August 22, 1983, supervisor redistricting plan for Bolivar County, Mississippi ... and *finally denying* all other relief requested by the plaintiffs in this action." (emphasis added). The court then decreed that the plan was finally approved and denied the plaintiffs all other relief.

The plaintiffs appealed neither the June 12, 1984, judgment nor the June 29, 1984, amended judgment. On November 20, the defendants filed a motion to dismiss the appeal lodged on March 15, contending that the February 14 order is not (1) a final judgment,[7] (2) an appealable interlocutory order granting or denying an injunction,[8] or (3) an appealable collateral order.[9]

## II.

■ "It is a principle of first importance that the federal courts are courts of limited jurisdiction."[10] Our statutory mandate grants us only "jurisdiction of appeals from all final decisions of the district courts,"[11] and from certain well defined interlocutory orders.[12] A final decision, the Supreme Court has said, "generally is one which ends the litigation on the merits and

leaves nothing for the court to do but execute the judgment."[13]

■ The appellants contend that the February 14 order "left the court with nothing to do but to retain jurisdiction and exercise the ministerial functions of scheduling elections." They also contend that the court retained no power of revision over its decision and that the order, on its face, shows that the Attorney General's action would have no impact on any conclusion of law or finding of fact. The appellants concede, however, that the district court should not have ruled on the validity of the county's plan prior to the Attorney General's preclearance, but argue that, despite the court's error, the February 14 order is an appealable final judgment and that any problem of procedure was removed by the Attorney General's subsequent preclearance of the county's plan.

We cannot accept the appellants' characterization of the February 14 order and the procedural posture of this case on appeal. In *McDaniel v. Sanchez*,[14] the Supreme Court clearly stated that legislative reapportionment plans, such as the plan devised by the county, are to be submitted to the Attorney General for preclearance before the district court takes action:

As we construe the congressional mandate, it requires that whenever a covered jurisdiction submits a proposal reflecting the policy choices of the elected representatives of the people—no matter what constraints have limited the choices available to them—the preclearance requirement of the Voting Rights Act is applica-

---

**6.** Fed.R.Civ.P. 59(e).

**7.** From which an appeal might be taken under 28 U.S.C. § 1291.

**8.** From which an appeal might be taken under 28 U.S.C. § 1292(a)(1).

**9.** From which an appeal might be taken under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–67, 69 S.Ct. 1221, 1225–56, 93 L.Ed.2d 1528, 1536–37 (1949).

**10.** C. Wright, Law of Federal Courts § 7, at 22 (4th ed. 1983).

**11.** 28 U.S.C. § 1291.

**12.** 28 U.S.C. § 1292. The Supreme Court has also determined that certain collateral orders are appealable. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed.2d 1528, 1536–37 (1949).

**13.** *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351, 357 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 916 (1945)).

**14.** 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981).

ble. It was, therefore, error for the District Court to act on the county's proposed plan before it had been submitted to the Attorney General or the United States District Court for the District of Columbia for preclearance.[15]

Moreover, even prior to the *Sanchez* opinion, the Court had indicated that a legislative plan adopted in response to a federal court's invalidation of a prior plan, would "not be considered 'effective as law' ... until it has been submitted and received clearance under § 5."[16]

■ The district court, therefore, could not properly have entered a final judgment on the validity of the plan prior to preclearance by the Attorney General and should not have acted prior to that time. The error of the court's action, however, does not invest its order with the finality requisite for its appeal, for the court retained jurisdiction, directed that the plan be submitted for preclearance, and neither denied or granted the relief requested. Notwithstanding the appellants' characterization of the face of the February 14 order, had the Attorney General disapproved the plan, the district court would have had the power to revise its opinion prior to the issuance of its final judgment. Even if the court had made no change, the proper appeal in this case would lie from the court's final judgment after preclearance.

In other difficult cases, we have given a "practical rather than a technical construction" to the finality requirement[17] and have also held that a final judgment is "one which disposes of the whole subject, gives all the relief that was contemplated ... and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree."[18] Those maxims are not, however, applicable here, for, most important, we are reluctant to characterize the scheduling of elections as a purely ministerial act in the voting rights context.[19] Even if we assume, moreover, that such scheduling is normally ministerial, the length, detail, and complexity of the June 29 amended judgment shows that the court had previously made no final determination of the rights of the parties involved and that the February 14 order was interlocutory.[20] Finally, even when we have allowed an appeal on the basis of a practical rather than a technical construction of the finality requirement, we have considered whether the decision to hear the appeal would "open the door to a host of appeals that are truly 'piecemeal.'"[21] "On balance, the potential evil of here establishing a precedent for other piecemeal appeals in other cases is real."[22]

■ Construing the district court's February 14 order as a declaratory judgment

**15.** *Id.* at 153, 101 S.Ct. at 2238, 68 L.Ed.2d at 741–742; *see also Hathorn v. Lovorn,* 457 U.S. 255, 266 n. 18, 102 S.Ct. 2421, 2428 n. 18, 72 L.Ed.2d 824, 835 n. 18 (1982); *Cook v. Luckett,* 735 F.2d 912, 922 (5th Cir.1984); *State of Mississippi v. Smith,* 541 F.Supp. 1329 (D.D.C.1982) (court lacks jurisdiction to consider constitutionality of the plan before it has been precleared pursuant to section 5).

**16.** *Wise v. Lipscomb,* 437 U.S. 535, 542, 98 S.Ct. 2493, 2498, 57 L.Ed.2d 411 (1978).

**17.** *See, e.g., United States v. Mississippi Power & Light Co.,* 638 F.2d 899, 903 (5th Cir.) (quoting *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199, 203 (1964)), *cert. denied,* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981); *Freeman v. Califano,* 574 F.2d 264, 267 (5th Cir.1978); *Jetco Elec. Indus., Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir. 1973).

**18.** 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.08[1], at 118 (1983) (quoting *City of Louisa v. Levi,* 140 F.2d 512, 514 (6th Cir.1944)) (footnotes omitted).

**19.** *Cf. NAACP v. Hampton County Election Comm'n,* — U.S. —, —, 105 S.Ct. 1128, 1134, 84 L.Ed.2d 124, 132 (1985) (change in scheduling of elections "cannot fairly be characterized as 'ministerial' in light of the sweeping objectives of the Act.").

**20.** 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.11, at 137–38 (1983).

**21.** *United States v. Mississippi Power & Light Co.,* 638 F.2d 899, 903 (5th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981).

**22.** *Freeman v. Califano,* 574 F.2d 264, 267 (5th Cir.1978).

does not make that order appealable. As the Supreme Court stated in *Liberty Mutual Insurance Co. v. Wetzel:* [23]

> Had respondents sought *only* a declaratory judgment, we would of course have a different case. But even if we accept respondents' contention that the District Court's order was a declaratory judgment on the issue of liability, it nonetheless left unresolved respondents' requests for an injunction ... and for attorneys' fees. It finally disposed of none of respondents' prayers for relief.[24]

We find *Liberty Mutual* especially instructive because the district court retained jurisdiction and instructed that the plan be submitted to the Attorney General for preclearance. Such an order is simply not final on its face or in its terms. As we stated in *Freeman v. Califano,*[25] "no decision of this Court has squarely held that we have a capricious residual power to 'finalize' otherwise nonfinal appeals." [26]

■ The appellants also contend that the February 14 order is appealable, pursuant to 28 U.S.C. § 1292(a)(1), on the basis that it denied their request for injunctive relief. On its face, the district court's order neither granted nor denied injunctive relief. In fact, the district court took no action on the requested relief until it issued its judgment of June 12 and its amended judgment of June 29. Nonetheless, the appellants assert that, because the district court did not immediately implement a nondiscriminatory plan and order new elections as they had requested in their complaint and because it approved a plan unacceptable to them, the February 14 order in effect denied them injunctive relief.

The district court could not properly have granted or denied the appellants' requested relief prior to preclearance by the Attorney General.[27] Moreover, the district court had previously enjoined appellees' use of the then existing redistricting plan, and the February 14 order did not modify the previous or any existing injunction. Although we have held that, "in the classification of an order as an injunction, the essential effect and character of an order, rather than the terminology applied to it, are decisive," [28] the effect and character that makes an order an injunction is that it requires "a party to do or refrain from doing something that is an integral part of the very matter in litigation, and invokes the normal equitable principles underlying the injunctive process." [29] The February 14 order neither granted nor denied an order of any such character or effect. At best the court errantly issued an "advisory opinion" over which it retained the power of revision. "Here there was no order of any kind either granting or denying an injunction...." [30] Moreover, the February 14 order did not have "serious, perhaps irreparable, consequences that [could have been] effectually challenged only by immediate appeal." [31]

Finally, the appellants do not contest the appellees' claim that the February 14 order is not a collateral order appealable under the doctrine of *Cohen v. Beneficial Indus-*

---

23. 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).

24. *Id.* at 742, 96 S.Ct. at 1206, 47 L.Ed.2d at 440 (emphasis in original).

25. 574 F.2d 264 (5th Cir.1978).

26. *Id.* at 267.

27. *See Sanchez,* 452 U.S. at 153, 101 S.Ct. at 2238, 68 L.Ed.2d at 741; *see also supra* note 15 and accompanying text.

28. *Martinez v. Mathews,* 544 F.2d 1233, 1236 (5th Cir.1976); *see also McCoy v. Louisiana State Bd. of Educ.,* 345 F.2d 720, 721 (5th Cir. 1965).

29. 7B J. Moore, M. Waxner, H. Fink, D. Epstein & G. Grotheer, Jr., Moore's Federal Practice ch. 83, at JC–422 (1984).

30. *Gunn v. University Comm. to End the War in Viet Nam,* 399 U.S. 383, 387, 90 S.Ct. 2013, 2016, 26 L.Ed.2d 684, 687 (1970) (holding, in circumstances similar to the present case, that the Supreme Court had no jurisdiction to hear a direct appeal under 28 U.S.C. § 1253, which requires an order granting or denying an injunction).

31. C. Wright, The Law of Federal Courts § 102, at 709 (4th ed. 1983).

*trial Loan Corp.*[32] We agree with the appellees that the February 14 order does not meet the requirements of the *Cohen* doctrine.[33]

 The appellants complain of the costs that they have incurred in pursuing this appeal and of the lateness of the appellee's motion to dismiss the appeal. "To the extent that [the appellants] found themselves in a dilemma, however, it was largely of their own making."[34] They failed to appeal from the June 29 amended judgment, which the district court explicitly labeled a final judgment, despite their knowledge that the doctrine of *Sanchez* prohibited the court from taking final action in the case prior to preclearance. The limits that Congress has seen fit to place upon our jurisdiction do not allow us to rescue the appellants' appeal simply because their error has been costly.

The waste and delay entailed in detailed consideration of whether appellate jurisdiction lies has evoked both repeated criticism and exhortation for legislative reconsideration. Professor Maurice Rosenberg has said, "The ... situation is an unacceptable morass ... a kind of crazy quilt of legislation and judicial decisions."[35] Dean Carrington has called for a legislative reform: "a statutory machete."[36] The existence of jurisdiction over a case, in either trial or appellate court, should be readily determinable by clear rules so that rights are not lost by failure to comply with intricate rules and meritorious cases are not delayed by debate over court province.[37] The power to solve the problem rests, however, in Congress' hands, not ours.

For these reasons, the appeal is DISMISSED.

---

**32.** 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed.2d 1528, 1536–37 (1949).

**33.** *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 358–59 (1978); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 11, 103 S.Ct. 927, 935, 74 L.Ed.2d 765, 777 (1983); *Gibbs v. Paluk,* 742 F.2d 181, 183 (5th Cir.1984).

**34.** *NAACP v. Hampton County Election Comm'n,* — U.S. —, —, 105 S.Ct. 1128, 1136, 84 L.Ed.2d 124, 135 (1985).

**35.** Rosenberg, *Solving the Federal Finality-Appealability Problem,* 47 Law & Contemp.Probs. 171, 172 (1984).

**36.** Carrington, *Toward a Federal Civil Interlocutory Appeals Act,* 47 Law & Contemp. Probs. 165, 166 (1984).

**37.** *See* Rosenberg, *supra* note 35, at 172, 177.