**Tammi HOLLEY, et al., Plaintiffs,**

v.

**CITY OF ROANOKE, Alabama, et al., Defendants.**

No. CIV. A. 01–A–775–E.

United States District Court, M.D. Alabama, Eastern Division.

July 12, 2001.

A. Wesley Pitters, A. Wesley Pitters, P. C., Montgomery, AL, Artur G. Davis, Davis Law Firm, Birmingham, AL, for Plaintiffs.

Thomas Oliver Kitchens, Oliver Kitchens, PC, Roanoke, AL, C. David Stubbs, Stubbs, Sills & Frye, PC, Anniston, AL, for Defendants.

Before CHARLES R. WILSON, Circuit Judge, W. HAROLD ALBRITTON, III, Chief District Judge, and MYRON H. THOMPSON, District Judge.

## ORDER

MYRON H. THOMPSON, District Judge.

This three-judge court has been convened pursuant to 28 U.S.C.A. § 2284 in order to consider a claim for injunctive and declaratory relief brought under § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c. Plaintiffs claim that defendants violated § 5 because they made a change in the process of selecting school

board members for the City of Roanoke, Alabama, without first obtaining § 5 preclearance. This matter is now before us on defendants' motion to dismiss. We conclude the motion should be granted.

According to the allegations in their complaint, plaintiffs are Tammi Holley (the elected Roanoke city council representative for District 1), Lathonia Wright (the elected Randolph County Commission representative for the area that encompasses District 1), Cheryl Sims (the representative on the City of Roanoke Board of Education), and Antonia W. Bell, Cotina W. Terry, and Gwyn L. Adamson (residents and voters of District 1). Defendants are the City of Roanoke, Roanoke's mayor Betty Ziglar, and three city council members, Walter Sudduth, Buster Robinson, and Richard Fetner.

The status-quo practice for selecting city school board members, as alleged by plaintiffs, has been that each of the five representatives on the city council has had appointment power to select one school-board member. Because each city council representative represents a particular district within the city, this district-based appointment practice has allegedly had the implication that each school-board member has been at least indirectly answerable to a particular district within the city and that each member has been understood by the public to be the school board member for a particular district.

Elections for the Roanoke city council are conducted through a system of five single-member districts as the result of the 1987 consent decree in *United States of America v. City of Roanoke, et al.*, CV–87–V–97–E (M.D.Ala), that ended the previous system of at-large elections under which, plaintiffs allege, racial bloc voting had been prevalent and black candidates had had little success. Districts 1 and 2 of the new system are now majority black and have had African-American representatives ever since the elections of 1988. The district-based appointment of school-board members was, according to plaintiffs, a second product of the 1987 consent decree. District-based appointment of school-board members has also, they allege, given black voters a voice on the school board that they would not have if the school board were selected on an "at large" basis by the whole city council.

Plaintiffs complain that defendants are refusing to allow the reappointment of Cheryl Sims, the incumbent school-board member allegedly appointed by District 1 representative Tammi Holley, and that defendants are thus attempting to substitute a collective city council decisionmaking process for the previous district-based appointment system. Plaintiffs aver that such a general change in appointment practice would dilute the representation of the interests of black voters on the school board, and aver specifically that the attempted ouster of Sims is motivated by Sims's opposition to the school board's expected effort to seek an end to long-standing federal school desegregation litigation.

Section 5 of the Voting Rights Act of 1965 authorizes an action to enjoin enforcement of a change in "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" for failure to get required preclearance from the Attorney General or the United States District Court for the District of Columbia. In the present case, plaintiffs appear to be alleging a change in a "standard, practice, or procedure with respect to voting."

In *Presley v. Etowah County*, 502 U.S. 491, 112 S.Ct. 820, 117 L.Ed.2d 51 (1992), the Supreme Court held that changes "with respect to voting" within the meaning of § 5 are changes that have a "direct relation to voting and the election process." 502 U.S. at 503, 112 S.Ct. at

829. These covered changes typically involve either "changes in election procedures" (for example, changes in candidacy requirements and qualifications; and changes from ward-based election to at-large election), or "substantive changes as to which offices are elective" (for example, replacement of appointed officials by elected officials; and expansion of the number of elected officials representing a governmental body). *Id.* at 503, 112 S.Ct. at 828. However, "[c]hanges which affect only the distribution of power among officials are not subject to § 5 because such changes have no direct relation to, or impact on, voting." *Id.* at 506, 112 S.Ct. at 830.

▪ Here the sole issues in dispute are which persons should be appointed as school board members by the city council and the manner of their selection by the city council. These issues involve only an internal distribution of power among an elected body's officials. For elected officials, appointments to various state, county, and city boards and agencies, and the disputes that attend these appointments, are daily grist. How these elected officials go about their routine tasks of appointment and how they alter internal decision-making procedures have no "direct relation to, or impact on, voting" for purposes of § 5. *Id.* at 504, 506, 112 S.Ct. at 829, 830.

It is true that, if the change at issue were a change from an appointed school board to an elected one, or vice versa, the change would then directly involve "a rule governing voting" and consequently would be covered by § 5. *Id.* at 506–507, 112 S.Ct. at 830; *see McCain v. Lybrand,* 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1984) (§ 5 applies to the replacement of appointed officials with elected officials). But *Etowah* teaches that, as long as the selection process was and remains appointive, internal distribution-of-power disputes of the nature presented to us over

the composition of the school board and the city council's procedures for making appointments to the school board are not covered by § 5.

▪ Plaintiffs contend that a change may require preclearance when it "effect[s] a significant relative change in the powers exercised by governmental officials elected by, or responsible to, substantially different constituencies of voters." *Etowah,* 502 U.S. at 500, 112 S.Ct. at 827. *Etowah,* however, expressly rejects this test as unworkable. "The question," according to the Court, "whether power is shifted among officials answerable to the same or different constituencies is quite distinct from the question whether the power voters exercise over elected officials is affected," and thus the suggested test "proceeds from the faulty premise that reallocations of authority within government can constitute voting changes." *Id.* at 507–508, 112 S.Ct. at 831.

Of course, we offer no opinion on whether defendants' actions violated the 1987 consent decree (which established the single-member districting system), § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973, or some other statute, federal or state. Those are matters that remain with the single-district judge in this case.

For the above reasons, it is the ORDER, JUDGMENT, and DECREE of the court that defendants' motion to dismiss the § 5 claim, filed July 9, 2001, is granted.

## CIVIL APPEALS CHECKLIST

1. *Appealable Orders:* Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    *Appeals from Final Orders Pursuant to 28 U.S.C. § 1291:* Only final judgments for orders of district courts (or final orders of bankruptcy courts which have

been affirmed by a district court under 28 U.S.C. § 158) usually are appealable. A "final" order is one which ends the litigation on its merits and leaves nothing for the district court to do but execute the judgment. A magistrate's report and recommendation is not usually final until judgment thereon is entered by a district court judge. *Compare* Fed. R.App.P. 5.1, 28 U.S.C. § 636(c).

In cases involving multiple parties or multiple claims, a judgment as to fewer than all parties or all claims is not a final, appealable decision. Fed.R.Civ.P. 54(b) does permit the district court to expressly direct entry of the judgment as fewer than all of the claims or parties. *See Pitney Bowes, Inc. v. Mestre,* 701 F.2d 1365, 1369 (11th Cir.1983), *cert. denied* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983). Certain matters, such as attorney's fees and costs, are collateral and do not affect the time for appealing from the judgment on the merits. *Buchanan v. Stanships, Inc.,* 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988); *Budinich v. Becton,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988).

*Appeals Pursuant to 28 U.S.C. § 1292(b) and FRAP 5:* The certificate specified in 28 U.S.C. § 1292(b) must be obtained before an application for leave to appeal is filed in the Court of Appeals. Denial or refusal by the district court to issue the certificate is not itself appealable.

*Appeals Pursuant to 28 U.S.C. § 1929(a):* Pursuant to this statute, appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions ..." This statute does not permit appeals from temporary restraining orders.

*Appeals pursuant to Judicially Created Exceptions to the Finality Rule:* These limited exceptions are discussed in many cases, including (but not limited to): *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848); *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964); *Atlantic Federal Savings & Loan Assn. Of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc.,* 890 F.2d 371 (11th Cir.1989). Compare *Coopers and Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)

2. *Time for Filing:* To be effective a notice of appeal must be timely filed. Timely filing is jurisdictional. In civil cases FRAP 4(a) and 4(c) set the following time limits:

*FRAP 4(a)(1):* The notice of appeal required by FRAP 3 "must be *filed with the clerk of the district court* within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by *any party* within 60 days after such entry ..." (Emphasis added) To be effective, the notice of appeal generally must be filed in the district court clerk's office within the time permitted. If a notice of appeal is mailed, it must be timely received and filed by the district court to be effective. FRAP 4(c) establishes special filing provisions for notices of appeal filed by an inmate confined in an institution, as discussed below.

*FRAP 4(a)(3):* "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the *first* notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires." (Emphasis added)

*FRAP 4(a)(5) and FRAP 4(a)(6):* The *district* court has power to extend the time to file a notice of appeal. Under FRAP 4(a)(5) the time may be extended if a motion for extension if filed within 30 days after expiration of the time otherwise permitted to file notice of appeal. Under FRAP 4(a)(6) the time may be extended if the district court finds upon motion that a party has not received notice of entry of the judgment or order and that no party would be prejudiced by an extension.

*FRAP 4(c):* If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or be a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid.

3. *Format of Notice of Appeal:* Form 1, FRAP Appendix of Forms, is a suitable format. *See also* FRAP 3(c).

   A single notice of appeal may be filed from a (single) judgment or order by two or more persons whose "interests are such as to make joinder practicable . . ." (FRAP 3(b))

4. *Effect of Notice of Appeal:* A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction (*see* Fed.R.Civ.P.

60) or to rule on a timely motion of the type specified in FRAP 4(a)(4)