# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3985

_____

Chris N. Acton; Boyd J. Arends;     *
Chris N. Babich; Tim Bach; Greg     *
Bacon; Anthony Bannister; Arnold J.     *
Bazat; Alan Beard; Mark E. Blakemore;  *
Bruce Britt; Mark Brunstrom; K. P.     *
Bullard; James E. Bullard; Eric T.     *
Caszatt; Brian Clifford; Justin M.     *
Collins; Daniel J. Comegys; Darrin W.  *
Arends; Rusty Bradley; Ron Cook;     *
Frank Kirby Crow; Keith E. Dothage;  *
Gary R. Drewing, II; Delwyn Duncan;  *
Kyle Fansler; Kurt Fansler; Ron M.     *
Fisher; Travis Floyd; Steven D. Forrest; *
Brad Frazier; Scott D. Frew; Andrew    *   Appeal from the United States
Gray; Tracy Gray; George F. Gregory;  *   District Court for the
David Hanks; Eric D. Hartman; Aaron    *   Western District of Missouri.
Hasheider; Antonio Hickam; John R.    *
Hiley; Michael Holz; Cameron House;  *
Greg Hrdina; Matt Hudson; Billy Hurt;  *
John Igleheart; Robert Joseph Innes;    *
James Jones; Jennifer Kamp; James E.  *
Kandlik; Jeremy A. Kuhlmann; Carol    *
Lexow; Dennis Long; Richard Martin;  *
Shawn McCouom; Daniel J. McGavock;*
Jan B. McCrary; Brenda M. McGruder;  *
Matthew Meinert; Rodger W.         *
Mertensmeyer; William Morris; Robert  *
Loren Muellet; Thomas G. Ogden;     *
Douglas W. Oncken; Michael Orth;     *
Eric T. Pooler; John Purves; David H.   *
Richerson; Dennis G. Rohr; Brint     *
Roush; Danny O. Sandker; Jon Adam    *

Sapp; Brian S. Smith; Rachel L. Smith;   *
Deborah L. Sorrell; Willam A. Stafford;  *
Jeffrey Strawn; Daniel K. Sturgeon;    *
Christopher Sturm; Michael G. Sutton;  *
Timothy Taylor; Coline E. Tegerdine;   *
J. Thacker; Eric William Thiessen;     *
Doug Thoma; Kevin R. Thompson;     *
Wade Thompson; Brian K. Tilman;    *
Rolando Tobar; Lisa A. Rodd; Gary     *
L. Warren, Jr.; Brian A. Wasson; Ladon  *
Lee Whitaker; Tandall Elwin White;   *
David C. Williamson; Tony Willits;    *
Marc Wright; Donald R. Zielinski;    *
John Wood; Richard Douglas; Mark W.  *
Poole,                             *
                                  *
        Plaintiffs-Appellees,    *
                                  *
    v.                             *
                                  *
City of Columbia, Missouri,       *
                                  *
        Defendant-Appellant.    *

_____

Submitted: October 14, 2005
Filed: February 8, 2006

_____

Before LOKEN, Chief Judge, LAY and BENTON, Circuit Judges.

_____

LAY, Circuit Judge.

# I. BACKGROUND

Chris N. Acton and ninety-nine current and former firefighters (the "firefighters") employed by the City of Columbia, Missouri (the "City") brought suit against the City for failing to include a series of payments in the firefighters' regular rate of pay, in violation of 28 U.S.C. § 207(e) (the Fair Labor Standards Act or "FLSA").

The firefighters subsequently moved for partial summary judgment, specifically alleging that monies earned under the City's sick leave buy-back, step-up pay, meal allowance, and standby programs should be included in their regular rate of pay. The firefighters also alleged the City willfully violated the FLSA and used an incorrect hours ratio to determine when the firefighters become eligible for overtime pay under the FLSA. The City did not file a cross-motion for summary judgment.

While the firefighters' motion for partial summary judgment was pending, the parties entered into a settlement agreement on the firefighters' longevity pay, step-up pay, and standby pay claims. During this interim period, the City also changed its hours ratio policy to comport with the requirements set forth in the firefighters' motion for partial summary judgment.

Regarding the firefighters' outstanding claims, the district court[1] subsequently granted the firefighters' motion in part, ruling that sick leave buy-back monies should be included in the firefighters' regular rate of pay. However, the district court also denied the firefighters' motion in part, ruling that monies received under the City's meal allowance program were excluded from the regular rate. Finally, the district court found no evidence that the City willfully violated the FLSA.

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

After entry of the district court's ruling, the parties filed a stipulation for dismissal on the claims addressed in the settlement agreement. The parties further stipulated that final judgment should be entered on the claims adjudicated in the district court's order.

The district court then entered final judgment on the settled claims, and each was dismissed with prejudice. The district court also referenced its prior order granting in part and denying in part the firefighters' motion for partial summary judgment.

The City now appeals the district court's grant of summary judgment to the firefighters, arguing that monies paid under its sick leave buy-back program should not be included in the firefighters' regular rate of pay.

## II.  APPELLATE JURISDICTION

At oral argument this court raised the issue of jurisdiction. We hold that the facts of this case present a rare instance where we may exercise jurisdiction to hear an appeal from an order that was granted in part and denied in part.

The jurisdiction of federal courts of appeal is generally limited to appeals taken from "final decisions of the district courts." 28 U.S.C. § 1291. Certain exceptions to the final judgment rule exist, as set forth in 28 U.S.C. § 1292, Rule 54(b) of the Federal Rules of Civil Procedure, and under the collateral order doctrine.[2]

---

[2]Under § 1292, federal courts of appeal may exercise jurisdiction over an interlocutory order that involves the denial of an injunction, or where the district court has certified a controlling issue of law. 28 U.S.C. § 1292(a)(1), (b). Under Rule 54(b) of the Federal Rules of Civil Procedure, federal courts of appeal also maintain jurisdiction over summary judgment rulings that do not dispose of an entire case, but where the district court nonetheless states that there is no just reason for delay and

Reinholdson v. Minnesota, 346 F.3d 847, 849 (8th Cir. 2003). None of these exceptions, however, are applicable to the facts of this case, and our analysis therefore turns on whether the district court's order constitutes a final decision for purposes of § 1291. Id.

For an order to be final, it must "'end[] the litigation on the merits and leave nothing for the court to do but execute the judgment.'" Id. (quoting Cunningham v. Hamilton County, 527 U.S. 198, 204 (1999)). Moreover, a final order must "'reflect some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as the [trial court] is concerned, is the end of the case.'" Id. (quoting Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995)) (internal citations omitted).

We first note that an order denying summary judgment to one party coupled with an order granting summary judgment to the same party on a different claim does not normally constitute a final decision under § 1291 because all the claims in the case are not yet resolved. See Catlin v. United States, 324 U.S. 229, 233 (1945). The trial court's denial of summary judgment as to one claim establishes that fact issues still remain for resolution at trial. Commodity Futures Trading Comm'n v. Morse, 762 F.2d 60, 63 (8th Cir. 1985) ("Denial of summary judgment . . . simply indicates that genuine fact issues exist [for trial]."). This denial, in turn, renders the entire order interlocutory, thereby precluding appellate review under § 1291. See Helm Fin. Corp. v. MNVA R.R., Inc., 212 F.3d 1076, 1079 (8th Cir. 2000) ("In general, denials of summary judgment are interlocutory and thus not immediately appealable.").

---

expressly directs entry of final judgment. Fed. R. Civ. P. 54(b). Finally, under the narrow, judicially-created collateral order doctrine, federal appeals courts may also exercise jurisdiction over interlocutory orders involving "decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment." Reinholdson v. Minnesota, 346 F.3d 847, 849 (8th Cir. 2003) (internal citations omitted).

Here, however, when the district court granted the firefighters' motion for partial summary judgment on the sick leave buy-back claim and denied the firefighters' motion on the meal allowance and willfulness claims, it noted that no genuine issues of material fact existed regarding any of the firefighters' claims.

Specifically, in the portion of its order denying summary judgment, the district court cited Department of Labor regulations to support its conclusion that monies earned under the City's per diem meal allotment program should not be included in the firefighters' regular rate of pay. Similarly, the district court found no evidence to support the firefighters' contention that the City willfully violated the FLSA. In sum, the district court made no reference to any factual disputes that required resolution at trial in either of its summary judgment denials. Indeed, footnote number one of the district court's order expressly notes that, "[t]here is no dispute about the facts of this case." Acton v. City of Columbia, No. 03-4159-CV-NKL, 2004 WL 2152297, at *1 (W.D. Mo. Sept. 10, 2004).

Courts have long struggled to decide precisely which orders qualify as "final" for purposes of § 1291. Gillespie v. United States Steel Corp., 379 U.S. 148, 152 (1964). The determination as to whether an order is final is often far from clear and, in these instances, we are guided by the accepted rule that the requirement of finality under § 1291 be given a "practical rather than technical construction." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949); see also Arendt v. United Power Ass'n, 635 F.2d 755, 756 (8th Cir. 1980).

To this end, we have no doubt that, had the City filed a cross-motion for summary judgment on the meal allowance and willfulness claims, the district court would have granted this motion.[3] This conclusion is based on the district court's legal

_____

[3]Similarly, if the firefighters had voluntarily dismissed their meal allowance and willfulness claims, this dismissal would have rendered the district court's order unquestionably final. See Chrysler Motors Corp. v. Thomas Auto Co., 939 F.2d 538,

analysis and subsequent rulings as matters of law, as well as the district court's express determination that no genuine issues of material fact were implicated in any of the three claims before the court. We therefore recognize the part of the district court's order denying summary judgment to be, in sum and substance, a grant of summary judgment to the City. See Helm Fin. Corp., 212 F.3d at 1080 (stating that a denial of summary judgment as a matter of law, coupled with a voluntary dismissal of all remaining claims, "in effect made the denial of summary judgment a final judgment for purposes of appeal"). Moreover, the analysis utilized, and ultimate legal conclusions drawn, by the district court in its order provide the requisite "clear and unequivocal manifestation" of the court's intent to dispose of the claims on the merits given the absence of any factual dispute.

We recognize that, when making the determination as to whether an order is final in the practical rather than technical sense, courts must balance "the inconvenience and costs of piecemeal review on the one hand [against] the danger of denying justice on the other." Gillespie, 379 U.S. 152-53 (internal citations omitted). In this case, however, there is no danger of piecemeal review that would inhibit us from extending jurisdiction. The firefighters' outstanding claims were resolved before the district court's order was issued. Thus, adjudication of this appeal will dispose of this litigation.[4]

---

540 (8th Cir. 1991) (holding that appellant's voluntary dismissal of the remainder of his claims transformed a grant of a motion for partial summary judgment into a final order).

[4]Although extension of jurisdiction in this case will resolve whether sick leave buy-back monies should be included in the firefighters' regular rate of pay, the parties' settlement agreement limits the effect of our ruling. Therefore, the true purpose of this appeal is to determine whether the City, in the future, must include sick leave buy-back monies in the regular rates' of pay of its other employees.

We see no compelling reason not to extend jurisdiction over this appeal simply because the district court failed to expressly state that it was granting the City summary judgment on the firefighters' meal allowance and willfulness claims, where every indication suggests the district court intended to do just this.[5] A contrary decision would force the City to file a motion for summary judgment that would surely be granted and possibly appealed once again, thereby further burdening our system with unnecessary litigation and wasting judicial resources. See Barnes v. Bosley, 790 F.2d 718, 720 (8th Cir. 1986) (taking into consideration "the considerable savings in judicial resources" when determining if an order is final under § 1291).[6]

Further, the firefighters are not prejudiced by this ruling. We base this conclusion on the firefighters' failure to contest the issue of appellate jurisdiction in their brief, as well as their express concession that this court maintained jurisdiction to hear the City's appeal. Simply, the firefighters made an informed and calculated decision not to appeal the district court's denials of summary judgment even though they recognized an appeal to be within this court's jurisdiction. This fact alleviates any concern that our extension of appellate jurisdiction in this instance would

---

[5]A district court maintains the discretion to grant a non-moving party summary judgment, even where the nonmovant does not file a cross-motion for summary judgment. Burlington N. R.R. Co. v. Omaha Pub. Power Dist., 888 F.2d 1228, 1231 n.3 (8th Cir. 1989).

[6]We do, however, reject the parties' attempts to consent to finality. First, the parties requested that the district court enter final judgment over its order granting in part and denying in part the firefighters' motion for partial summary judgment. Then, the parties expressly conceded the issue of appellate jurisdiction in their respective briefs. Litigants themselves cannot consent to the jurisdiction of the courts. Orsini v. Wallace, 913 F.2d 474, 479 (8th Cir. 1990) ("[P]arties cannot consent to subject matter jurisdiction [] because extending consent to its 'inevitable conclusion' will eliminate civil jurisdiction from the federal courts, a result that is likely unconstitutional.").

otherwise preclude the firefighters from filing an appeal under the belief that the district court's order was interlocutory under § 1291.

The facts of this case compel the conclusion that the district court's order was final under § 1291. The record shows the district court adjudicated the firefighters' meal allowance and willfulness claims given the absence of a genuine dispute of material fact and, as such, the order denying summary judgment on these claims also constituted a grant of summary judgment to the City. This, coupled with the district court's grant of summary judgment to the firefighters on the sick leave buy-back claim, renders the order a final decision for purposes of § 1291. Accordingly, we have jurisdiction to hear the merits of the City's appeal.

## III. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards set forth by the district court. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995). Summary judgment is proper "if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The facts in this case are undisputed. Our review is therefore limited to matters of law, which we review de novo. Wal-Mart Stores, Inc. v. Alexander & Alexander, 855 F.2d 1326, 1330 (8th Cir. 1988).

## IV. SICK LEAVE BUY-BACK

Under the City's sick leave buy-back program, firefighters who work twenty-four hour work shifts during the course of one year accumulate ten days of sick leave. Firefighters who fail to use their sick leave are entitled to "sell back" any of the ten unused sick days to the City in exchange for a lump sum payment equal to 75% their

regular hourly pay, provided the firefighter has amassed at least six months sick leave. The firefighters contend that all monies received from the sale of sick leave should be included in their regular rate of pay. The regular rate of pay calculation is critical because it provides the base point from which the firefighters' overtime compensation is calculated.[7]

## A.    The Fair Labor Standards Act

Section 207(e) of the FLSA provides, in relevant part, that "all remuneration for employment paid to, or on behalf of, the employee" must be included in the employee's regular rate of pay, provided such remuneration is not prohibited by one of eight statutory exclusions listed under § 207(e)(1)-(8). 29 U.S.C. § 207(e). There is a statutory presumption "that remuneration in any form is included in the regular rate calculation. The burden is on the employer to establish that the remuneration in question falls under an exception." Madison v. Res. for Human Dev. Inc., 233 F.3d 175, 187 (3d Cir. 2000). Under the FLSA, all employers, including public agencies, are covered by the Act.[8] 29 U.S.C. § 203(d), (x). Therefore the City, as a municipal entity, is subject to the requirements of the FLSA.

---

[7]The FLSA requires employers to pay covered employees time and one-half their regular rate of pay for each hour worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1).

[8]In 1985, the United States Supreme Court ruled the FLSA could be constitutionally extended to regulate state and local governments. Garcia v. San Antonio Metro. Transit. Auth., 469 U.S. 528, 557 (1985). In response, Congress amended the FLSA to give all public employers until April 15, 1986, to comply with the Act. Fair Labor Standards Act Amendments of 1985, Pub. L. No. 99-150, § 2(c), 99 Stat. 787, 788. Since this time, the FLSA has been applied to the conduct of state and local government.

Before beginning our analysis, we must clarify a preliminary matter of statutory construction under the FLSA that has been a point of confusion between the parties. First, the City argues sick leave buy-back monies do not constitute remuneration for employment. Next, the City contends sick leave buy-back monies are also excluded under § 207(e)(2) because they "are not made as compensation for [the employee's] hours of employment." Id. However, the language "not made as compensation for [the employee's] hours of employment" posited in § 207(e)(2) is but a mere re-articulation of the "remuneration for employment" requirement set forth in the preambulary language of § 207(e). Section 207(e)(2), properly understood, operates not as a separate basis for exclusion, but instead clarifies the types of payments that do not constitute remuneration for employment for purposes of § 207. Therefore, we treat the City's "remuneration for employment" and § 207(e)(2) arguments under the same mode of analysis. Finally, because both provisions modify one other, we must necessarily consider the express requirements of § 207(e)(2) and the federal regulations interpreting it when determining if sick leave buy-back monies constitute remuneration for employment.

### 1.    *Remuneration for Employment*.

Regulation § 29 C.F.R. § 778.223 provides the touchstone for our inquiry because it addresses the scope of § 207(e)(2).[9]  Specifically, regulation § 778.223

---

[9]The firefighters also cite regulation § 778.211 and a Department of Labor opinion letter to support their position that sick leave buy-back monies should be included in their regular rate of pay.  See 29 C.F.R. § 778.211; Opinion Letter from Herbert J. Cohen, Deputy Administrator, U.S. Department of Labor (Feb. 24, 1986). Under regulation § 778.211, attendance bonuses and bonuses announced to induce employees to work more steadily or efficiently must be included in the employee's regular rate of pay.  However, we need not address whether sick leave buy-back monies are tantamount to an attendance bonus per se, or a bonus announced to induce employees to work more steadily or efficiently, because these requirements are extraneous to § 207.  Under § 207, we need only consider two factors.  First, we must

addresses whether monies paid to employees for remaining on call are excluded from the regular rate under § 207(e)(2). The regulation concludes that monies paid to employees to remain on call, while not related to "any specific hours of work," are nevertheless awarded as "compensation for performing a duty involved in the employee's job" – namely, the employee's willingness and commitment to work unscheduled hours if requested. See 29 C.F.R. § 778.223. The plain language of the regulation makes clear that all monies paid as compensation for either a general or specific work-related duty should be included in the regular rate. The critical question before this court is whether sick leave buy-back monies compensate the firefighters for some specific or general duty of employment.

In order to qualify for sick leave buy-back payments, firefighters must come to work regularly for a period of several years in order to amass the requisite six month sick leave reserve. Then, the firefighters must also accrue additional sick leave in the present year in order to be eligible for buy-back. Thus, the primary effect of the buy-back program is to encourage firefighters to come to work regularly over a significant period of their employment tenure. We recognize consistent workplace attendance to be a general duty of employment and, therefore, rule that sick leave buy-back monies constitute remuneration for employment.[10]

---

determine whether sick leave buy-back monies constitute remuneration for employment. If so, we must then decide whether sick leave buy-back monies are nevertheless excluded by one or more of the statutory exceptions enumerated under § 207(e)(1)-(8). 29 U.S.C. § 207.

[10] We also note that sick leave buy-back monies do not resemble any of the payments expressly excluded under § 207(e)(2). See 29 C.F.R. § 778.224(a) (noting that payments excluded from the regular rate under § 207(e)(2) must "be 'similar' in character to the payments specifically described" in (e)(2)). Sick leave buy-back monies, in contrast to § 207(e)(2) payments, are awarded to employees for coming to work consistently, not for work that was never performed.

The City sets forth three primary arguments to support its conclusion that sick leave buy-back payments are not remuneration for employment. First, the City argues its buy-back program was intended to promote two objectives unrelated to employee compensation. On the one hand, the sick leave buy-back program was intended to provide firefighters with a form of short-term disability insurance because the City does not have a disability policy covering employee illness or disability lasting six months or less. The sick leave buy-back program, with its six-month accrued sick leave requirement, was devised as a mechanism for employees to self-insure against personal illness or disability. Alternatively, the City argues its sick leave buy-back program discourages employees from treating sick leave as another form of vacation or personal leave because the program creates a money incentive for employees to accrue, but not use, their sick leave.

These arguments are not compelling. Even if the sick leave buy-back program was intended to provide employees with a form of short-term disability insurance and to discourage misuse of sick leave, one plain effect of the program is to reward regular workplace attendance through a non-discretionary, year-end, lump sum payment. The City's proffered justifications do not change the undisputed fact that the firefighters are plainly rewarded for regularly showing up for work over a period of years.

Second, the City also cites 29 C.F.R § 825.125, a Department of Labor opinion letter, and a decision from a federal district court in the Northern District of Illinois to support its claim that bonuses awarded for perfect attendance do not require performance by the employee, but rather contemplate the absence of occurrences. 29 C.F.R. § 825.215 ("Bonuses for perfect attendance and safety do not require performance by the employee but rather contemplate the absence of occurrences."); Opinion Letter from Maria Echaveste, Administrator, U.S. Department of Labor (Mar. 21, 1994) ("Bonuses premised on 'perfect attendance' or 'perfect safety' are rewards not for work or production, but for compliance with rules."); Dierlam v. Wesley Jessen Corp., 222 F. Supp. 2d. 1052, 1057 (N.D. Ill. 2002) (noting that a bonus that

does not require its recipient to meet production goals or quality standards "simply contemplates the non-occurrence of an event – [the recipient's] absence from work").

However, none of these three authorities address the applicability of § 207. Instead, each confronts the issue of whether an employee is entitled to a bonus for good attendance upon returning to work under the Family Medical Leave Act. The City's attempt to cite language taken out of context from authorities interpreting another federal statute in no way binds us in this case. See Arnott v. Mataya, 995 F.2d 121, 124 n.4 (8th Cir. 1993) (stating that an argument based on language that was "taken out of context" from other inapplicable cases was not persuasive). To the extent the City uses these authorities to argue that consistent workplace attendance does not "require performance by the employee," we flatly disagree. We believe consistent workplace attendance does require performance. In the modern workplace, regular and prompt workplace attendance is a valued commodity, one for which the City appropriately rewards its employees.

Finally, the City cites the Sixth Circuit's decision in Featsent v. City of Youngstown, 70 F.2d 1456, 1461 (6th Cir. 1995), to support its argument that sick leave buy-back monies do not constitute remuneration for employment.[11] In Featsent, the Sixth Circuit ruled that monies paid to employees who did not submit medical

---

[11]The City also cites the Third Circuit's decision in Minizza v. Stone Container Corp., 842 F.2d 1456, 1461 (3d Cir. 1988), to support its claim that sick leave buy-back monies do not constitute remuneration for employment. However, Minizza addressed a fundamentally different payment program. The Minizza court was confronted with the issue of whether lump sum payments awarded to induce employees to ratify a collective bargaining agreement should be excluded under § 207(e)(2). Because the "remuneration for employment" determination is a highly fact-intensive question that focuses narrowly on the specific operation of the program at issue, the Third Circuit's Minizza decision does not help instruct our analysis because that case considered a wholly distinguishable payment program.

claims and failed to use accrued sick leave[12] were excluded from the regular rate of pay under § 207(e)(2) because such payments are "unrelated to the [employee's] compensation for services and hours of service." Featsent, 70 F.3d at 905.

We decline to follow the Sixth Circuit's decision in Featsent. The Featsent court failed to articulate any basis for its reasoning. The court did not distinguish regulation § 778.223 in reaching its conclusion, nor did it recognize and explain how payments awarded to an employee for not using accrued sick leave, which necessarily requires employees to work more days than they are required, is not tantamount to payment for services rendered. Because we are unpersuaded by the Sixth Circuit's analysis, we reject its conclusion.

## 2. *Statutory Exceptions.*

The second part of our inquiry asks whether sick leave buy-back payments are excluded by of one of the eight statutory exceptions listed under § 207(e). The City's appeal relies exclusively on § 207(e)(2), which we have already addressed. Although the City cites no other basis for exclusion in its brief, this court, at oral argument, first raised the issue of whether § 207(e)(5) excludes sick leave buy-back payments from the regular rate. The dissent contends that sick leave payments should be excluded under § 207(e)(5). We now address this issue.

Section 207(e)(5) provides:

[E]xtra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess

---

[12]Under the program at issue in Featsent, employees accrue sick leave at a rate of one and one-quarter days per month of employment. Featsent, 70 F.3d at 902 n.4.

-15-

of the employee's normal working hours or regular working hours, as the case may be[.]

Id.

The dissent argues sick leave monies should be excluded under § 207(e)(5) because they constitute premium payments for specific hours worked. This analysis fails for several reasons. First, sick leave monies are not paid for specific hours worked. Instead, these payments compensate employees for a record of consistent attendance over the course of several years, not simply for working days during a given year they are otherwise entitled to take off.

Second, in order for payments to be excluded under § 207(e)(5), they must be "paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum [required in a] workweek." Id. Even assuming, as the dissent does, that sick leave buy-back payments are paid in sole recognition for the specific days a firefighter chooses to work instead of calling in sick,[13] there is still no basis to exclude such payments under § 207(e)(5). Section 207(e)(5), by its own terms, limits its applicability to payments made for certain hours worked in excess of the employee's normal daily or weekly schedule. Under the dissent's approach, buy-back payments are, at best, premium payments for working normally scheduled hours.

Finally, § 207(e)(5) plainly excludes only "premium" payments – that is, payments no less than one and one-third the employee's regular rate. See 29 C.F.R. § 778.308(b). The dissent creatively "compounds" sick leave buy-back payments, which are awarded at the sub-premium rate of 75% the firefighters' hourly wage, with

---

[13]We note it is impossible, in the practical sense, to determine the specific days a given Firefighter would have worked, but decided not to, in order to preserve his eligibility for buy-back payments. This further supports the conclusion that buy-back payments are not attributable to specific days or hours worked.

-16-

the firefighters' base hourly wage. This ignores the fact that the premium payments themselves must be at least one and one-third the employee's hourly rate. See id. Be this as it may, the dissent's approach, taken to its logical conclusion, yields unsettling results. Under the dissent's theory, all extra monies paid to employees for specific hours worked may be "compounded" with the employee's regular hourly rate and excluded under § 207(e)(5), in contravention of the express requirements of 29 C.F.R. § 778.207(b). See 29 C.F.R. § 778.207(b) (stating that non-overtime premiums for specific hours worked, such as nightshift differentials and hazard pay, must be included in the regular rate). Therefore, we rule that § 207(e)(5) does not exclude sick leave buy-back payments from the regular rate of pay.

## IV. CONCLUSION

The authority of federal regulation § 778.223, coupled with the statutory presumption favoring the inclusion of all monies in the regular rate of pay, mandate that lump sum payments awarded under the City's sick leave buy-back program be included in the firefighters' regular rate of pay. As such, we affirm the district court's grant of summary judgment.

LOKEN, Chief Judge, dissenting.

I respectfully dissent. I believe that the only circuit court to consider the issue correctly concluded that compensation paid under a sick leave buy-back program such as the City of Columbia's should be excluded from the FLSA's definition of "regular rate." Featsent v. City of Youngstown, 70 F.3d 900 (6th Cir. 1995).

Sick leave buy-back payments admittedly do not fit comfortably within the exclusion in 29 U.S.C. § 207(e)(2) for "payments made for occasional periods when no work is performed." But the court is wrong to suggest that such payments "are not related to specific duties or hours worked." In my view, sick leave buy-back

-17-

payments are functionally equivalent to premium overtime pay that is expressly excluded from an employee's regular rate. Like overtime, and unlike true attendance bonuses, these payments relate to specific hours *worked* -- the days that the employee chose to work rather than to use paid sick leave.

As the Supreme Court said in the FLSA's formative years, "[t]o permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium -- a pyramiding that Congress could not have intended." Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 464 (1948). This principle was codified in 1949. See 29 U.S.C. §§ 207(e)(5)-(e)(7). If sick leave buy-back payments fit awkwardly under § 207(e)(2) because they relate to hours worked, rather than to hours not worked, these payments are squarely within the purview of the three exclusions found in subsections (e)(5)-(e)(7) that apply to "extra compensation provided by a premium rate paid for certain hours worked."[14]

Section 207(e)(5) excludes "extra compensation provided by a premium rate paid for certain hours worked . . . because such hours are hours worked . . . in excess of the employee's . . . regular working hours." A firefighter who works one or more paid sick leave days has worked in excess of his "regular working hours." If otherwise eligible under the City's program, he may sell unused sick leave to bring his total pay for sick leave hours worked up to 175% of his regular rate. The related exclusion in § 207(e)(6) applies to "extra compensation provided by a premium rate paid for work by the employee on . . . regular days of rest" if the premium rate is not less than one and one-half times the regular rate. These exclusions were intended to

---

[14]Unlike the exclusion in § 207(e)(2) for payments for hours not worked, compensation excluded from the employee's regular rate under subsections (e)(5)-(e)(7) "shall be creditable toward overtime compensation payable pursuant to this section." § 207(h). The record on appeal does not reveal what impact, if any, that difference would have in this case. I would leave that question for the district court to resolve on remand.

prevent the pyramiding of "overtime on overtime." They have been applied to a variety of overtime compensation programs. See Alexander v. United States, 32 F.3d 1571, 1577 (Fed. Cir. 1994); Brock v. Two "R" Drilling Co., Inc., 772 F.2d 1199, 1201-02 (5th Cir. 1985); Brennan v. Valley Towing Co., Inc., 515 F.2d 100, 109-10 (9th Cir. 1975).

In response, the court asserts that sick leave buy-back payments are not compensation at a premium rate. This ignores economic reality. The City agreed to pay the plaintiff firefighters for ten days of sick leave each year. If sick leave is used, the City must pay another employee to do the work, presumably at a rate at least equal to the regular rate of the firefighter on sick leave. If the firefighter instead works, leaving his sick leave unused, the City through the buy-back program pays, on top of the regular rate already paid, a premium equal to 75% of the firefighter's regular rate. Thus, for those days worked, the firefighter is paid 175% of his regular rate. This premium is greater than and functionally no different than the premium the FLSA requires employers to pay for overtime work -- not less than one and one-half times (150%) the employee's regular rate. See 29 U.S.C. § 207(a). And like overtime, extra compensation paid for unused sick leave is offset by the employer not incurring the expense of hiring additional workers or paying other employees to fill in.

It may make little difference whether the City's sick leave buy-back payments are excluded from a firefighter's regular rate under § 207(e)(2) because they are "similar to payments made when no work is performed due to illness," Featsent, 70 F.3d at 905, or under §§ 207(e)(5) or (6) as overtime compensation paid at a premium rate. But the contrary decision of the district court and this court to include those payments in the regular rate both distorts FLSA principles and discourages use of a creative overtime payment device that benefits both employers and employees. I respectfully dissent from this decision.

_____