[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12216

Non-Argument Calendar

_____

SECURITIES AND EXCHANGE COMMISSION, et al.,

Plaintiffs,

ACHERON CAPITAL, LTD.,

in its capacity as investment manager,

Plaintiff-Appellant,

versus

MUTUAL BENEFITS CORP., et al.,

Defendants,

BARRY MUKAMAL,

as Trustee of the Mutual Benefits Keep Policy Trust,

                                        Trustee-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:04-cv-60573-FAM

_____

Before WILLIAM PRYOR, Chief Judge, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Acheron Capital, Ltd., appeals an order approving procedures recommended by Barry Mukamal, the trustee of the Mutual Benefits Keep Policy Trust, to sell insurance policies held by the Trust. Mukamal moves to dismiss for lack of jurisdiction. Because the order Acheron challenges is not a final postjudgment decision we have jurisdiction to review, we grant Mukamal's motion and dismiss this appeal.

"This appeal is the latest in a years-long postjudgment dispute about the disposition of fraudulently sold investments," *Acheron Capital, Ltd. v. Mukamal*, 22 F.4th 979, 984 (11th Cir. 2022). In January 2022, Mukamal moved the district court to approve

procedures to sell the insurance policies still held by the Trust. Mukamal requested authority to execute asset purchase agreements with prospective buyers. He also requested that the district court approve bidding procedures, his "means of providing notice," and the form of the notice. And Mukamal requested that the district court plan to "schedule a final hearing to approve the sale of the . . . Policies to the highest and best bidder (or bidders) submitted at auction."

Mukamal stated that he had, with a magistrate judge's approval, offered a "Keep Option" to all investors who held a 100 percent beneficial interest in a particular policy and that the magistrate judge had permitted Acheron to retain policies in which it held a 100 percent interest. Mukamal stated that he intended to auction the entire portfolio of policies remaining after Acheron and other 100 percent investors removed any policies.

The auction, Mukamal stated, would involve "selling all of the Trust's right, title and interest in and to the . . . Policies." Mukamal proposed to identify what policies would be sold, to classify tranches of policies for purposes of bidding, to allow stalking horse bidders to submit offers to establish a minimum value for the policies, and then to entertain bids above those amounts. Mukamal stated that he would require all bidders to execute purchase agreements to bind them to their offers, and he proposed using specific bidding procedures to maximize the value of the policies.

Mukamal's proposed procedures also "contemplate[d] the entry of a Sale Approval Order which approve[d] and authorize[d]

[him], on behalf of the Trust, to sell and assign the . . . Policies to the Bidder(s) submitting the Final Successful Bid(s) . . . in accordance with the Purchase Agreement." He explained that the sale approval order would include "findings of fact and conclusions of law." Mukamal denied that he would "address or have the Court rule on the method or manner of distribution of the proceeds from the sale," as that "w[ould] be addressed after sale."

Over Acheron's objection, the district court granted Mukamal's motion. The district court allowed Mukamal "to implement the procedures for the sale of the remaining . . . Policies held by the Trust as set forth in the Motion," but prohibited "condition[ing] Acheron's . . . participation in the auction on Acheron waiving any claims against the Trustee or the right to appeal." The district court required Mukamal to specify in any asset purchase agreement with prospective stalking horse buyers "that the closing of any sale shall occur seven (7) days after the entry of a Sale Approval Order (as defined in the motion)" and "that[,] if the Sale Approval Order is stayed prior to closing, closing shall occur seven (7) days after any such stay is lifted." The district court also required Mukamal after selecting a stalking horse buyer or buyers to "file a Notice of Filing indicating: (a) the amounts and material terms and conditions of the 'stalking horse' offers, (b) the time and date of the auction and other relevant deadlines, and (c) any other information relevant to the conduct of the auction sale." The district court directed the magistrate judge, after "submission of the Notice of Filing," to "schedule a hearing for the first available date after the scheduled

date of the auction, for consideration of the Motion for Entry of Sale Approval Order to be filed," and directed Mukamal's counsel to contact the magistrate judge "[i]f no hearing is scheduled within one week of the submission of the Notice of Filing." The district court approved the bidding procedures, subject to Acheron's right to participate, and Mukamal's request "to proceed with an auction sale" during which he had to "solicit [and] select the highest and best bid (and back-up bid) for each tranche." And the district court required Mukamal, "[u]pon the conclusion of the auction, . . . [to] file a Motion for Entry of Sale Approval Order" containing his "determination . . . of the highest and best bids (and back-up bids) submitted at auction" and to "request entry of the Sale Approval Order" after the hearing before the magistrate judge.

We review *de novo* whether we have jurisdiction to hear this appeal. *Acheron*, 22 F.4th at 986. We have jurisdiction to review final orders. 28 U.S.C. § 1291. To be final, an order must "dispose[] of all the issues raised in the motion that initially sparked the postjudgment proceedings." *Mayer v. Wall St. Equity Grp.*, 672 F.3d 1222, 1224 (11th Cir. 2012). "[A] post-judgment order is an appealable final decision if the order finally disposes of the question raised by the post-judgment motion . . . and there are no pending proceedings raising related questions." *Acheron*, 22 F.4th at 987 (internal quotation marks and ellipses omitted) (alteration adopted).

Our recent precedential decision in this litigation makes clear that we lack jurisdiction to review the order granting Mukamal's motion to approve procedures to sell the insurance policies

because it is not a final order. *Id.* at 987–89. Under our two-step inquiry, the order may be appealed as a final decision only if, upon treating these postjudgment proceedings as free-standing litigation, the order "dispose[s] of all the issues raised in the motion that initially sparked the postjudgment proceedings" and is "apparently the last order to be entered in the action." *Id.* at 987 (quoting *Mayer*, 672 F.3d at 1224). The challenged order addresses how "to wind down the trust and sell the . . . Policies," and that "process is still ongoing." *Id.* at 988. Mukamal received court permission to group the policies for sale, to entertain bids, and to select purchasers. After the auction, Mukamal must file a "Motion for Entry of Sale Approval Order," and the magistrate judge must hold an evidentiary hearing for the court to decide whether to approve the sale. Because the order approving Mukamal's sale procedures is "a mere step towards a sale order, there may be no intrusion by appeal until the district court enters that order." *Id.* (internal quotation marks omitted) (alteration adopted).

Acheron likens its situation to *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), but that decision is inapposite. The Supreme Court concluded in *Brown Shoe* that the order "had sufficient indicia of finality" and was appealable because it "disposed of the entire complaint filed by the Government," passed on "[e]very prayer for relief," ordered one of the two companies in the prospective merger to "divest itself completely of all stock, share capital, assets or other interests" in the other company, and permanently enjoined the companies from acquiring any interest in the other.

370 U.S. at 308. That one company had "to propose in the immediate future a plan . . . []to effect[uate] the . . . order of divestiture," the Court stated, did not render nonfinal an order that resolved all issues of liability and relief to be granted. *Id.* In contrast to *Brown Shoe*, there are substantive proceedings to complete before Mukamal can sell the insurance policies. The order states that the magistrate judge must "schedule and conduct a hearing on the Motion for Entry of Sale Approval Order." So "there will be a final decision . . . [o]nly after the district court approves the sale." *Acheron*, 22 F.4th at 988.

Acheron's argument that the order is immediately appealable under the doctrine of marginal finality applied in *Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964), fails too. As we explained in our earlier decision, that doctrine does not extend beyond the unique facts of *Gillespie*. *Acheron*, 22 F.4th at 992. This appeal does not involve those unique facts about the wrongful death of a seaman, "so jurisdiction is not present either." *Id.*

"[O]nly a final judgment or order is appealable . . . ." *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989); *see* 28 U.S.C. § 1291. And here, "[o]nly after the district court approves the sale will there be a final decision." *Acheron*, 22 F.4th at 988. So we lack jurisdiction over this appeal.

We **DISMISS** this appeal for lack of jurisdiction. And we **DENY AS MOOT** Acheron's motion to determine jurisdiction.